Earnest E. REAMES, Appellant,

v.

POLICE OFFICERS' PENSION BOARD
OF THE CITY OF HOUSTON, et al,
Appellees.

No. 14–95–00605–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 3, 1996.

Clinard J. Hanby, Houston, for appellant.

John Stanley Rainey, Houston, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

LEE, Justice.

Appellant, Earnest E. Reames, appeals a summary judgment granted in favor of appellee, the Houston Police Officers Pension System (Pension System). Reames brings two points of error complaining of the summary judgment granted in favor of the Pension System and the denial of his motion for partial summary judgment. We affirm.

Reames was a police officer in the Houston Police Department (HPD) from 1963 until he retired in 1983. Throughout the time he was employed by HPD, Reames contributed to the pension fund established for Houston police officers under article 6243g–1. *See* TEX.REV.CIV. STAT. ANN. art. 6243g–1 (Vernon 1970 & Supp.1996) (Police Officers Pension System in cities of 1,200,000 or more). In 1981, the legislature enacted the Police Officers Retirement Plan in Certain Cities under article 6243g–3. *See* TEX.REV.CIV. STAT. ANN. art. 6243g–3 (Vernon 1970 & Supp.1996). Existing members of the g–1 pension plan could opt to become members of the g–3 pension plan by filing an election before December 31, 1981. Reames did not opt to become a g–3 member. Therefore, he remained under the g–1 plan until he retired in 1983 and began receiving benefits from the plan a month after he retired.

In 1984, Reames was again hired by the City of Houston as a peace officer in the airport police division. From the time he was hired by the airport police division until November 1992 Reames received both retirement benefits from the g–1 pension and his peace officer salary from the Houston Aviation Department. In November 1992, Houston restructured HPD so that the airport police division became part of HPD rather than being under the Aviation Division. Reames was not required to reapply or take an entrance exam and his duties did not change as a result of the restructure. Shortly after the restructuring, the pension board notified Reames that he could not draw a salary as an active HPD officer and receive pension benefits. In January 1993, Reames stopped receiving benefits from the plan.

Reames brought this declaratory judgment action seeking to continue receiving pension benefits. Both parties moved for summary judgment. The Pension System moved for summary judgment contending that Reames was rehired by order of city council ordinance and, therefore, was subject to the rules prohibiting receipt of both a pension and a salary under the g–3 pension plan. Reames moved for partial summary judgment arguing that he did not opt into the g–3 pension plan nor was he rehired by HPD. Thus, he

asserted he was still entitled to receive his pension benefits under the g–1 plan. The trial court denied Reames' motion for partial summary judgment and granted the Pension System's motion for summary judgment.

The Pension System argued in its summary judgment motion that Reames became a member of the g–3 plan when the airport police merged into HPD. The g–3 plan states that "member" means "an employee who is either first hired or *rehired* after September 1, 1981." TEX.REV.CIV. STAT. ANN. art. 6243g–3, § 1(h) (Vernon Supp.1995) (emphasis added). The Pension System asserts that Reames became a member of the g–3 plan because he was "rehired" by HPD when the Houston City Council transferred the entire airport police division from the aviation department to the police department. The Pension System argues that the city ordinance abolished all of the old aviation department positions, and created new positions, one of which Reames now occupies. The language relied upon by the Pension System is contained in section 1 of the ordinance, which states:

> all positions, classes, classifications and salaries or salary ranges in conflict herewith or not included herein, are hereby *abolished* and superseded to the extent of any conflict and the positions, classes, classifications and salaries or salary ranges enumerated and set out in Exhibit "A", attached hereto and made part hereof for all purposes are hereby *created*.

Houston, Tex., Ordinance 92–1484 (Nov. 18, 1992) (emphasis added). The Pension System claims that the filling of these newly created positions necessitated the hiring and, due to appellant's past employment, the rehiring of Reames.

In addition, the Pension System urges that we should construe "rehire" in its most logical context. Relying on the Oxford Encyclopedic English Dictionary (Oxford University Press 1991), the Pension System asserts that "rehire" is defined as "once more, to employ for wages or for a fee" ("re" and "hire" are defined separately). Reames former employer was HPD, he spent nine years employed by the aviation department, and is now currently employed again by HPD. The

Pension System thus maintains that the reality of Reames situation is that he is once more working for HPD. The Pension System further claims to interpret the term any other way requires a hyper-technical reading of the statute which ignores the everyday meaning of "rehire."

Reames, on the other hand, contends that the city ordinance clearly did not intend for the newly transferred aviation department police to be considered as rehired employees. Reames points out that he was not "rehired" in any normal sense of the word. His duties, salary, and employer (City of Houston) all remained the same. He analogizes this situation to a corporate reorganization and calls the move a "transfer" or "reassignment." The ordinance creating the transfer is, according to Reames, unambiguous on its face. The ordinance reads in pertinent part:

> Whereas, it is the intent of City Council that the members *currently employed* in the Airport Police service shall remain in administrative control of the Houston Police Department, and within the Houston Police Department.
>
> . . .
>
> Section 2. Specifically, the classified positions in the Airport Police service of the Department of Aviation are hereby *reassigned* to the classified service of the Houston Police Department.
>
> . . .
>
> Section 11. If any former employee of the Police Department is *re-employed* by the Police Department after a break in service for any reason, such employee shall serve a probationary period.

Houston, Tex., Ordinance 92–1484 (Nov. 18, 1992) (emphasis added). The preamble refers to members "currently employed" and sections 2 and 11 refer to the change as "reassigned" or "re-employed." Thus, the city ordinance does not clearly state that Reames was "rehired," but rather it indicates that he was either "reassigned" or "re-employed."

Reames also points out that he could not legally be hired by HPD without compliance with the requirements set out in the Civil Service Statutes. *See* TEX. LOC. GOV'T CODE

ANN. §§ 143.021, 143.022, 143.023, 143.025, 143.027 (Vernon 1988 & Supp.1995). (requiring all new city employees to complete a written entrance exam, physical exam, and probationary period); *see also City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802 (Tex.1984) (indicating that there is a presumption that all city ordinances are valid, and not illegal). Therefore, Reames asserts that he was not "rehired" because it would have been illegal for the city to "rehire" the airport police without them complying with the statute. He contends that he must only have been reassigned as the ordinance indicates on its face. However, the code cited by Reames refers to "beginning" employees, and not former employees who have already been through the civil service examination. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.021, 143.022, 143.023, 143.025, 143.027 (Vernon 1988 & Supp.1995). In addition, the ordinance clearly states that the airport police would stay in their own division, and only administrative control would be handled through HPD. Houston, Tex., Ordinance 92–1484 (Nov. 18, 1992).

Admittedly, Reames has been placed in a difficult and perplexing situation. However, we find that the legislature specifically addressed the problem presented in the current case by enacting amendments 25A and 16A to the g–3 and g–1 plans in 1993. *See* TEX.REV.CIV. STAT. ANN. art. 6243g–3, § 25A (Vernon Supp.1995); TEX.REV.CIV. STAT. ANN. art. 6243g–1, § 16A (Vernon 1970 & Supp. 1995). The amendments, entitled "Persons rejoining or transferred by city; service credit; double benefits; return to service," expressly deny the right to receive both pension benefits and a salary from the city as an officer. Thus, regardless of whether Reames is a member of the g–1 or the g–3 plan, he is not entitled to the declaratory relief that he seeks.

Reames argues that the recent amendments addressing the situation where a police officer is transferred from one city department to another are inapplicable since they cannot be applied retroactively. A retroactive law is one which "take[s] away or impair[s] vested rights acquired under existing laws." BLACK'S LAW DICTIONARY 1184

(5th ed.1979). In Texas, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988). Texas law strongly militates against the retroactive application of laws. *Houston Indep. Sch. Dist. v. Houston Chronicle Publishing Co.,* 798 S.W.2d 580, 585 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Texas courts apply statutes retroactively only if "it appears by fair implication from language used that it was the intention of the Legislature to make it applicable to both past and future transactions." *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 708–09 (1943). If the statute impairs vested property rights then it may not be retrospective. *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n of Texas,* 573 S.W.2d 502, 504 (Tex.1978). Amendments are also presumed not to apply retroactively. *See Amplifone Corp. v. Cameron County,* 577 S.W.2d 567, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ). However, this general rule does not apply when the amendment is merely procedural or remedial. *Daniel v. Daniel,* 779 S.W.2d 110, 114 (Tex.App.—Houston [14th Dist.] 1989, no writ). Therefore, in order to determine whether the statute applies retroactively we must decide whether the amendment is substantive or procedural/remedial and whether or not it impairs a vested property right.

Substantive law relates to the rules and principles which fix and declare the primary rights of individuals and provides the type of remedy available in case of invasion of those rights. *Blonstein v. Blonstein,* 831 S.W.2d 468, 472 (Tex.App.—Houston [14th Dist.] 1992, writ denied). A remedial matter pertains to the practice and procedure by which substantive law is made. *Id.* As they fix and declare the amount of funds a pensioner is to receive, the amendments are substantive and not procedural law.

Furthermore, as counter-intuitive as it may seem, the amendments do not impair a vested property right. In *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009 (1937), the supreme court held that because state employee pension plans are from purely

**632**

statutory origins, the right of a pensioner to receive monthly payments from a statutory pension fund was subordinate to the right of the legislature to completely abolish the pension fund or diminish the accrued benefits of a pensioner under the plan. *Id.* 101 S.W.2d at 1012–13. "The rationale being that an employee who elects to participate in a statutory pension plan does so 'in contemplation of the reserved right of the legislature to amend or to repeal laws on which the pension systems are found.'" *Duckett v. Board of Trustees,* 832 S.W.2d 438, 442 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (quoting *City of Dallas,* 101 S.W.2d at 1012). Therefore, a pensioner in a statutory pension plan does not have a vested right to his pension. He merely has an expectancy based upon anticipated continuance of existing law. *Ex parte Abell,* 613 S.W.2d 255, 261–62 (Tex.1981); *see also Board of Managers of the Harris County Hosp. Dist. v. Pension Bd. of the Pension Sys. for the City of Houston,* 449 S.W.2d 33, 37 (Tex.1969). "The Legislature which created it can recall its bounty at its discretion." *City of Dallas,* 101 S.W.2d at 1013. Because Reames did not have a vested property right in the pension benefits, the legislature was free to apply the amendments retroactively.

The primary rule in statutory interpretation is that the court must look to the intent of the legislature and must construe the statute so as to give it that intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). Statutory construction requires that the court look either to the intent of the legislature or, if the statute is clear, the court should give the statute its everyday meaning. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). The court must seek the intent of the legislature as it is found in the plain and common meaning of the words used by the legislature. *Monsanto Co. v. Cornerstones Municipal Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993). In addition, every word of a statute is presumed to have been used for a purpose and the cardinal rule of statutory construction requires that each sentence, clause, phrase and word be given effect if reasonably possible. *Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957). In addition, application of new statutes passed after the events in suit is unquestionably proper in many situations. *Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229, 257 (1994).

The amendments facially indicate that they are to apply retroactively. The amendments, in pertinent part, state:

> An employee of the city who has retired under this article, ... and is or *has been* transferred by action of the city ... becomes or *became* as of the effective date of the transfer an active member of the plan under this article from which the person earlier retired.

TEX.REV.CIV. STAT. ANN. art. 6243g–3, § 25A (Vernon Supp.1995); TEX.REV.CIV. STAT. ANN. art. 6243g–1, § 16A (Vernon 1988 & Supp. 1995).

The section is written in both the present and the past tense. The amendment encompasses both current and former transferees. The wording "has been transferred" indicates that the current situation was contemplated when this amendment was drafted. The Pension System notes, and Reames admits, that the amendments, which were drafted after Reames initiated this action, were created specifically to address the issues presented by this lawsuit. This fact further confirms that the legislature intended the amendments to apply retroactively. Accordingly, based on the facts and circumstances surrounding passage of the amendments coupled with the clear language employed by the legislature in the amendments, we hold that sections 25A and 16A were intended to apply retroactively.

Reames' membership in either plan will subject him to the prohibitions set forth in sections 25A or 16A that "[t]he Pension Board shall withhold payment of pension benefits under this Act if it is determined that a retired member is receiving both pension benefits from the fund and a salary from the city as a classified officer that cover the same period." Thus, regardless of whether Reames is a member of the g–1 or g–3 plans he is not entitled to the declaratory relief that he seeks. Accordingly, we overrule ap-

pellant's two points of error and affirm the
judgment of the trial court.