**Lonnie WHITESIDE, Rose City Sand Corporation, and Jack Huebner, Appellants.**

v.

**Michael WATSON, Appellee.**

No. 11–98–00237–CV.

Court of Appeals of Texas, Eastland.

Feb. 16, 2000.

Rehearing Overruled March 23, 2000.

N. Terry Adams, Jr., Denice Smith, Jeff Nobles, Smith, Nobles & Adams, Houston, Robert L. Ramey, Ramey & Chandler, Houston, Thomas O. Moses, Moses & Lockhart, Beaumont, for appellants.

Gerald W. Eddins, Eddins & Bennett, Port Arthur, Richard N. Countiss, Law Offices of Richard N. Countiss, Houston, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

OPINION

W.G. ARNOT, III, Chief Justice.

Michael Watson sued Lonnie Whiteside, Rose City Sand Corporation, and Jack Huebner for injuries arising from an accident in which the vehicle he was driving was hit from behind by a dump truck being driven by Whiteside. The jury awarded appellee $1,050,000, and the trial court added prejudgment interest in the amount of $135,030. The jury attributed 15 percent of the fault to Whiteside (the truck driver), 50 percent to Rose City (Whiteside's employer), and 35 percent to Huebner (the President and sole shareholder of Rose City). Additionally, the jury assessed exemplary damages against Rose City in the amount of $800,000 and against Huebner in the amount of $500,000. Appellants Rose City and Huebner present two issues for review, and appellant Whiteside presents six. We affirm the trial court's judgment.

### Background Facts

Appellants do not challenge the legal or factual sufficiency of the evidence. On the afternoon of June 23, 1995, appellee was driving his car in the far left westbound lane of I–10, just outside of Beaumont. Scott Evans' car had come to a complete stop ahead of appellee as a result of a flat tire. There were several cars between appellee and Evans' car, all of which successfully stopped, including appellee. Whiteside, however, did not stop in time. His dump truck collided with appellee's car, propelling it into other vehicles. Appellee suffered multiple injuries as a result of the collision, including herniated and bulging discs in his back, severe and chronic leg and back pain, and post-traumatic arthritis.

### Jury Shuffle

■ All appellants allege, in their first issue, that the trial court erred by conducting a second shuffle of the jury panel in contravention of TEX.R.CIV.P. 223.

On the first morning of the trial, after the jury panel had been seated, Whiteside asked the trial court to shuffle the names of the members of the jury panel as permitted by Rule 223. The bailiff took the jury cards, turned them face down, and shuffled them like a deck of playing cards. The jury was then seated in the order in which the cards were turned up after the shuffle. Although counsel for Charles and Ronda Cormier, plaintiffs who settled with appellants during trial and are not parties to this appeal, were present during this shuffle, counsel for appellee was not pres-

ent at that time. After the shuffle, the parties and attorneys adjourned for lunch. When they reconvened after lunch, the Cormiers' counsel and appellee's counsel asked the court to shuffle the names of the members of the jury panel, as the first shuffle was not done in compliance with Rule 223. Over objections and arguments from appellants, the trial court decided to perform the shuffle in compliance with Rule 223. The jury cards were then placed in a receptacle, shuffled, and drawn by the bailiff. The jury was seated in the order in which the cards were drawn from the receptacle.

Appellants argue that the shuffle after lunch violated Rule 223. The relevant portion of Rule 223 provides that:

[T]he trial judge of such court, upon the demand prior to voir dire examination by any party or attorney in the case reached for trial in such court, shall cause the names of all members of such assigned jury panel in such case to be placed in a receptacle, shuffled, and drawn, and such names shall be transcribed in the order drawn on the jury list from which the jury is to be selected to try such case. There shall be only one shuffle and drawing by the trial judge in each case.

The last sentence of Rule 223 limits the number of shuffles to one. Appellants argue that the first shuffle substantially complied with the procedures as well as the policy of Rule 223 and that it was the one "shuffle and drawing" allowed by the rule. Therefore, according to appellants, the shuffle after lunch violated Rule 223, and the trial court abused its discretion by allowing it to occur.

■ Rules of procedure are interpreted in accordance with the rules of statutory construction. *Love v. The State Bar of Texas*, 982 S.W.2d 939, 942 (Tex.App.— Houston [1st Dist.] 1998, no pet'n). The purpose of rule construction is to deter-

mine and effectuate the intent of the enacting body. See *Monsanto Company v. Cornerstones Municipal Utility District*, 865 S.W.2d 937, 939 (Tex.1993). The plain and common meaning of the words used determines the intent of the enacting body. Monsanto Company v. Cornerstone Municipal Utility District, supra. Therefore, unless it is unclear or ambiguous, a rule is given its common meaning. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). In addition, every sentence, clause, phrase, and word of the rule must be given effect if reasonably possible. *Reames v. Police Officers' Pension Board of the City of Houston*, 928 S.W.2d 628, 632 (Tex.App.—Houston [14th Dist.] 1996, no writ).

■ The last sentence of Rule 223 states that there shall be "only one shuffle and drawing." To decide that this sentence prohibited the shuffle after lunch, as appellants urge, would emasculate the earlier portion of Rule 223 which mandates that the trial court *"shall* cause the names of all members of such assigned jury panel ... to be *placed in a receptacle, shuffled, and drawn."* (Emphasis added). Both sentences use the word "shall," which we construe as a mandatory term that imposes a duty. TEX. GOV'T CODE ANN. § 311.016 (Vernon 1998); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999). Appellant's interpretation of Rule 223 gives full effect to the mandatory language in the last sentence of Rule 223 but ignores the mandatory language in the earlier sentence. The only interpretation that gives full effect to both "shalls" is that the trial court shall cause the names of all members of the assigned jury panel to be placed in a receptacle, shuffled, and drawn and shall do so only one time. Any other interpretation makes the earlier language mandating the specific procedure to be used in the shuffle merely advisory and unnecessary.[1]

---

1. Appellants assert that the second shuffle was not performed in compliance with Rule 223 either and that, therefore, the trial court

erred by conducting that shuffle. They assert that the second shuffle was conducted incorrectly because the bailiff, not the judge, drew

Appellants rely on *Rivas v. Liberty Mutual Insurance Company*, 480 S.W.2d 610 (Tex.1972). In *Rivas*, the trial court refused to shuffle the jury panel despite the defendant's request that it do so. *Rivas v. Liberty Mutual Insurance Company, supra* at 611. The supreme court held that it was error for the trial court to refuse to perform the shuffle mandated by Rule 223 but that the "error complained of did not raise an inference of probable harm" as the "underlying purpose of issuing a random list of jurors was ... substantially complied with." *Rivas v. Liberty Mutual Insurance Company, supra* at 612. Appellants contend that *Rivas* stands for the proposition that, so long as the first shuffle was done in "substantial compliance" with Rule 223, it was a shuffle and drawing as contemplated by the rule and, therefore, the shuffle after lunch violated the last sentence of Rule 223. The supreme court did not, however, use the "substantial compliance" standard to determine whether the trial court erred in *Rivas*, i.e., whether the trial court's failure to conduct a shuffle was in compliance with Rule 223. Instead, the court held that the trial court erred but that, because the underlying purpose of Rule 223 was substantially complied with, the trial court's error was not harmful. *Rivas v. Liberty Mutual Insurance Company, supra* at 612.

In this case, the first shuffle was not performed in compliance with the mandatory procedures set forth in Rule 223. Whether it substantially complied with the underlying purpose of Rule 223 is irrelevant to the determination of whether it was error. Rule 223 sets forth a mandatory procedure for shuffling the jury panel, and failure to comply with that procedure

is error. See *Galveston, H. & S.A. Ry. Co. v. Wessendorf*, 39 S.W. 132, 133 (Tex.Civ. App.1896).

■ Moreover, even if the trial court erred by conducting the second shuffle, the error was harmless. See TEX.R.APP.P. 44.1. Appellants assert that a traditional harm analysis is inappropriate under these circumstances, citing *Patterson Dental Company v. Dunn*, 592 S.W.2d 914 (Tex. 1979); *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965); and *Heflin v. Wilson*, 297 S.W.2d 864 (Tex.Civ.App.—Beaumont 1956, writ ref'd). *Patterson Dental Company* and *Tamburello* were cases involving the allocation of peremptory strikes. In both cases, the supreme court held that the harmless error rule was applicable but that, due to the difficulty of showing harm arising from that type of error, the requirements would be relaxed. See, e.g., *Patterson Dental Company v. Dunn, supra* at 921. The court stated that, in the context of the allocation of peremptory strikes, error would be reversible if the trial which resulted was "materially unfair." *Patterson Dental Company v. Dunn, supra*. Based on the disparity in the allocation of the strikes and the sharply contested nature of the lawsuits, the supreme court found that the error in each case was reversible. *Patterson Dental Company v. Dunn, supra; Tamburello v. Welch, supra* at 118. In *Heflin*, the defendant was challenging the manner in which the jury panel was selected. *Heflin v. Wilson, supra* at 865. Although the county in which the trial court sat qualified for the jury-wheel system, the jury panel was selected using the jury-commission method. *Heflin v. Wilson, supra*. The court

---

the names out of the receptacle. However, they have not cited us to any cases that have determined that Rule 223 requires the judge to draw the names out of the receptacle. There is an apparent inconsistency in Rule 223. The first portion of the rule states that "the trial judge of such court ... *shall cause* the names of all members of such assigned jury panel ... to be placed in a receptacle, shuffled, and drawn," and the last portion of

the rule states that "[t]here shall be only one shuffle and drawing *by the trial judge* in each case." Rule 223. (Emphasis added) The first portion of the rule explicitly allows for the shuffle and drawing to be conducted at the command of the judge by someone other than the judge. It was not error for the bailiff to draw the names out of the receptacle at the behest of the judge.

held that selection of the jury panel by the jury-commission method was error and that harm was presumed as the federal and state constitutions guaranteed the right to a trial by a jury that had been "selected in substantial compliance with [the] law." *Heflin v. Wilson, supra* at 866. Additionally, the court held that to approve the judgment would:

> [L]eave to the discretion of trial courts the methods by which grand and petit jurors are to be drawn and selected, or would at least tend to promote laxness in complying with the laws governing the selection of jurors.

*Heflin v. Wilson, supra* at 866.

While these cases are instructive on the nature of a party's right to trial by jury, *Rivas* gives the most guidance on the appropriate harm analysis in the context of Rule 223. The supreme court held in *Rivas* that *Tamburello* and *Heflin* are not controlling when the harmless error issue arises from a violation of Rule 223. *Rivas v. Liberty Mutual Insurance Company, supra* at 612. Instead, a traditional harmless error analysis is appropriate. See Rule 44.1. This is true because a violation of Rule 223 is not generally going to be an infringement upon the fundamental right to trial by jury. *Rivas v. Liberty Mutual Insurance Company, supra* at 612. In this case, "[t]he underlying purpose of issuing a random list of jurors was ... substantially complied with"; therefore, even assuming arguendo that the second shuffle violated Rule 223, any error was harmless. *Rivas v. Liberty Mutual Insurance Company, supra.* Appellants have not shown that any alleged violation of Rule 223 probably caused the rendition of an improper judgment. Rule 44.1. Appellant Whiteside's first issue and appellants Huebner and Rose City's first issue is overruled.

■ Appellant Whiteside also complains, in his second issue, that the trial court's decision to allow the shuffle after lunch was error because appellee's objection was not timely. Whiteside contends that appellee should have objected before or during the time the names of the members of the jury panel were being shuffled like a deck of cards. We disagree. The trial court properly decided to shuffle the names of the members of the jury panel in compliance with Rule 223. At the time that it did so, the parties had not yet begun voir dire, and no substantial rights of any party were prejudiced. Moreover, Whiteside waived this argument because he did not timely notify the trial court of his belief that appellee's request for a shuffle was not timely. TEX.R.APP.P. 33.1; see *Martinez v. City of Austin*, 852 S.W.2d 71, 73–74 (Tex.App.—Austin 1993, writ den'd). Whiteside's only objection at trial was that the shuffle violated Rule 223. Appellant Whiteside's second issue is overruled.

## Spoliation of Evidence

Appellant Whiteside, in his third issue, and appellants Huebner and Rose City, in their second issue, contend that the trial court erred by instructing the jury on the spoliation presumption. The instruction read:

> A party is entitled to show that the opposing party has destroyed documents that would bear on a crucial issue in the case. You are instructed that the destruction of relevant evidence raises a presumption that the evidence would have been unfavorable to the spoliator or to the one destroying the document.

The evidence at trial showed that, pursuant to applicable trucking regulations, Whiteside completed a Driver's Daily Log as well as a Vehicle Inspection Report for each day he worked. The Driver's Daily Log reflected the number of hours spent driving by Whiteside, and the Vehicle Inspection Report allowed him to keep his employer informed about the condition of the truck he was driving. Whiteside gave the original to his employer, Rose City, and kept a carbon copy for his own records. Whiteside kept all of his copies, and

they were introduced into evidence at trial. Whiteside's copies indicated that the Vehicle Inspection Report he turned in on June 19, 1995, indicated problems with the brakes, air regulator, and main steering box on the truck. On June 20 and 21, he listed concerns about the main steering box and the air regulator. Finally, on June 22 and 23, Whiteside indicated on the reports that the truck he was driving had problems with the brakes, air regulator, and main steering box. However, subsequent to receiving notice of this lawsuit, Huebner ordered the originals of these documents, along with many other documents not relevant to this case, burned pursuant to an unwritten document retention policy. At trial, Huebner asserted that he had no notice that the brakes on the truck were faulty and, at the very least, also insinuated that Whiteside altered his copies to make it appear that Huebner did.[2] The fact that the originals were not available to be introduced into evidence at trial, in light of Huebner's testimony that his originals of the Vehicle Inspection Reports had not indicated faulty steering and brakes, prompted the trial court's instruction to the jury on the spoliation presumption.

■■■■ A trial court has great discretion in submitting instructions to the jury. *Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Additionally, a trial court has broad discretion to remedy spoliation. See *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex.1998). A trial court abuses its discretion only when it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Isern v. Watson*, 942 S.W.2d 186, 190 (Tex. App.—Beaumont 1997, pet'n den'd). A jury instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.—San Antonio 1998, pet'n den'd). Even an erroneous instruction does not require reversal if it did not cause the rendition of an improper judgment. Rule 44.1.

■■■■ Spoliation is the improper destruction of evidence. *Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex.App.—Fort Worth, 1993, writ den'd), citing BLACK'S LAW DICTIONARY 1257 (5th ed.1979). When a party fails to produce evidence within its control, the law presumes that, if produced, the evidence would operate against that party. Brewer v. Dowling, supra. This presumption serves to insure that a litigant's rights are not impaired by another party's improper destruction of relevant evidence. *Trevino v. Ortega, supra* at 953. The spoliation presumption arises, however, only after the party not in control of the evidence has introduced evidence that is harmful to the party who had control of the evidence. *Watson v. Brazos Electric Power Cooperative, Inc.*, 918 S.W.2d 639, 643 (Tex.App.—Waco 1996, writ den'd). Justice Baker, in a concurrence in the supreme court's most recent word on spoliation, offered guidance on the spoliation doctrine. *Trevino v. Ortega, supra* at 953–61; see also *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666–68 (Tex.App.—Houston [1st Dist.] 1998, no pet'n)(relying on the factors set forth in Justice Baker's concurrence in *Trevino* to analyze spoliation issue). The determination of whether a spoliation presumption instruction is justified is a question of law based on three factors: (1) whether there

---

**2.** For example, during trial, Huebner testified:

Q: You're telling this jury, though, that Whiteside came up with these documents [Vehicle Inspection Reports] later; is that correct?

A: *Yes.*

\* \* \*

A: If they [Vehicle Inspection Reports] would have had those complaints [bad brakes and steering], *that truck would have not been rolling.*

\* \* \*

Q: But, yet, you're saying that Mr. Whiteside could have, quote, "cooked the books" on his logs later or his inspection reports. But these [records of repairs kept by Rose City] weren't cooked, right?

A: *That's right.* (Emphasis added)

existed a duty to preserve the evidence; (2) whether the alleged spoliator breached that duty, either negligently or intentionally; and (3) whether the spoliation prejudiced the nonspoliator. *Trevino v. Ortega,* *supra* at 954–55 (Baker, J., concurring).

Appellants do not contend that Huebner and Rose City were not under a duty to preserve the Vehicle Inspection Reports[3] nor do they argue that the duty was not breached.[4] Rather, appellants assert that the spoliation presumption instruction was erroneous because appellee was not prejudiced by Huebner and Rose City's destruction of the reports.[5] In support of this proposition, appellants rely on the fact that appellee introduced into evidence the carbon copies, produced by Whiteside, of the very same reports destroyed by Huebner and Rose City. Appellants' position would be correct had Huebner testified that the carbon copies introduced by appellee at trial were identical to the originals he received from Whiteside on the days leading up to the wreck. Under those circumstances, the spoliation presumption would be unnecessary as Huebner would be admitting that the documents he improperly destroyed were unfavorable to him, establishing that he was aware of the poor condition of the truck he owned that Whiteside was driving. Also, more importantly, appellee would not have been prejudiced by Huebner's destruction of the reports under those circumstances as he would be introducing, to everyone's satisfaction, the exact same evidence that was destroyed. Huebner, however, consistently testified at trial that, prior to the wreck, he had been unaware of the condition of the truck and that the carbon copies that were introduced at trial had been "doctored" to contain information not in the originals he received. Huebner was essentially testifying that the documents introduced by appellee were falsified and not the same documents that he destroyed.[6] Therefore, appellee was prejudiced by the destruction of the documents.

Appellant Whiteside's third issue is overruled, and appellants Huebner and Rose City's second issue is overruled.

### Jury Instruction on Emergency

Appellant Whiteside, in his fourth issue, asserts that the trial court erred by refusing his requested jury instruction on emergency.

A trial court has great discretion in submitting instructions to the jury. *Texas Department of Human Services v. E.B.,* *supra* at 649. A trial court abuses its discretion only when it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Isern v. Watson, supra* at 190. Proper jury instruction assists the jury, accurately states the law, and finds support in the pleadings and evi-

---

**3.** This lawsuit was filed against Huebner and Rose City before the reports were destroyed, and "there is no question that a party's duty to preserve relevant evidence arises during pending litigation." *Trevino v. Ortega, supra* at 955, citing TEX.R.CIV.P. 215.

**4.** The documents' destruction was not beyond Huebner's control. In fact, they were burned at his direction; and, importantly, "when a party's duty to preserve evidence arises before the destruction or when a policy is at odds with a duty to maintain records, the policy will not excuse the obligation to preserve evidence." *Trevino v. Ortega, supra* at 957 (Baker, J., concurring) (citing *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 75 (S.D.N.Y. 1991)).

**5.** Appellant Whiteside also complains that "the trial court was never requested to rule [and that] the trial court did not rule on the spoliation." This issue is not supported by any argument, citation to case law, or reference to the record; and we do not, therefore, address it. See, e.g., *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 607 (Tex.App.—Dallas 1990, no writ).

**6.** Huebner and Rose City also assert that, in fact, Huebner's testimony did not contest the accuracy and validity of the carbon copies of the Vehicle Inspection Reports. There is sufficient evidence in the record to support the proposition that Huebner was in fact attacking the carbon copies in his testimony.

dence. *Wal–Mart Stores, Inc. v. Middleton, supra* at 470. Even an erroneous instruction does not require reversal if it did not cause the rendition of an improper judgment. Rule 44.1.

■ Whiteside was not entitled to the requested jury instruction because his pleadings never advanced the defensive theory of emergency. See TEX.R.CIV.P. 278. His pleadings did assert the defensive theory of unavoidable accident, but that is a separate concept that did not entitle him to an instruction on emergency. The trial court's refusal to submit Whiteside's requested instruction was not error. Appellant Whiteside's fourth issue is overruled.

### Negligence of Scott Evans

■ In his fifth issue, Whiteside argues that the trial court erred by refusing to submit an issue on the negligence, proximate cause, and percentage of fault of Evans. Evans was the individual whose car was stopped in the far left lane of the interstate due to a flat tire. His stalled vehicle began the chain of events that ultimately resulted in appellee's vehicle being struck from behind by the dump truck being driven by Whiteside.

Evans was originally a defendant in the lawsuit but was nonsuited by appellee. He was not subsequently brought into the lawsuit by any defendant and was not a party to the lawsuit at the time of trial. The Civil Practice and Remedies Code provides that the trier of fact:

> [S]hall determine the percentage of responsibility ... for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought ... (1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party who has been joined under Section 33.005.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (Vernon 1997). Evans does not fit into any of these four categories. As such, the trial court did not err by refusing to submit the requested question as the jury was not authorized to determine Evans' percentage of responsibility. Under the circumstances, Whiteside would have been entitled to a question on Evans' negligence, proximate cause, and percentage of fault only by bringing Evans into the lawsuit through TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (Vernon 1997). *Bounds v. Scurlock Oil Company*, 730 S.W.2d 68, 72 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.)(stating that no party is entitled to a question on the percentage of responsibility of a nonparty). Whiteside's fifth issue is overruled.

### Definitions in the Charge

Finally, in his sixth issue, appellant Whiteside avers that the trial court erred by including definitions of "earning capacity" and "physical impairment" in the jury charge. He asserts that the definitions were surplusage that impermissibly varied from the Pattern Jury Charge [7] and improperly commented on the weight of the evidence.

■ Whiteside does not contend that the definitions of "earning capacity" and "physical impairment" were incorrect statements of the law. Rather, he contends that any addition to the Pattern Jury Charge is error per se. A trial court does err by altering a specific Pattern Jury Charge that the Texas Supreme Court has adopted as the law of this state to the exclusion of all other instructions, definitions, and questions. *First International Bank in San Antonio v. Roper Corporation*, 686 S.W.2d 602 (Tex.1985); *Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984); *Acord v. General Motors Corporation*, 669 S.W.2d 111 (Tex.1984). However, the Pattern Jury Charges have not been adopted and approved in their entirety by the supreme court. Trial courts have broad discretion to add definitions to a Pattern Jury

7. STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC (2nd ed.1987).

Charge that has not been declared the exclusive method of charging a jury in Texas. *H.E. Butt Grocery Company v. Bilotto*, 985 S.W.2d 22, 23 (Tex.1998). A definition is proper if it assists the jury in rendering a verdict. TEX.R.CIV.P. 277; *Wichita County, Texas v. Hart*, 917 S.W.2d 779, 783–84 (Tex.1996).

 Pattern Jury Charge 7.02, which relates to personal injury damages, has not been adopted as the exclusive law of this state by the supreme court. Therefore, there was no error unless the trial court abused its discretion by defining "earning capacity" and "physical impairment" in the jury charge. We hold that the trial court did not err by including the definitions. Both "earning capacity" and "physical impairment" are terms of art that have specific legal definitions. It is a proper function of the jury charge to define words that have specific meanings that may not be known by the members of the jury. See *Oadra v. Stegall*, 871 S.W.2d 882, 890 (Tex.App.—Houston [14th Dist.] 1994, no writ).

Whiteside also alleges that the definitions were improper as they were comments on the weight of the evidence. To be comments on the weight of the evidence, the definitions would have suggested to the jury the trial court's opinion on the matter. *H.E. Butt Grocery Company v. Bilotto, supra* at 24. The trial court placed the definitions of "earning capacity" and "physical impairment" in the charge after the jury had already determined that Whiteside was negligent but before the jury assessed damages. At this point in the charge, the definitions did not nudge the jury in any direction but, rather, assisted the jury by explaining terms that have technical and precise meanings that the jury was to use in assessing damages. Whiteside has not shown that the trial court abused its discretion. Whiteside's sixth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.