NO. 07-03-0221-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 30, 2003



______________________________




JIMMY BRUCE EDWARDS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 252ND CRIMINAL DISTRICT COURT OF JEFFERSON COUNTY;



NO. 87636; HONORABLE LAYNE WALKER, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER


 Pursuant to a plea of not guilty, appellant Jimmy Bruce Edwards was convicted by
a jury of robbery as a habitual offender and punishment was assessed at 25 years
confinement. Appellant timely perfected this appeal and the clerk's record was filed on
May 23, 2003. Jami Anderson, Official Court Reporter for the 252nd Criminal District
Court filed two requests for extensions of time in which to file the reporter's record citing
as an explanation a capital murder appeal she was transcribing. Both requests were
granted extending the deadline to August 22, 2003. A third request for extension of time
was filed on August 27, 2003, requesting 90 additional days. The request was denied;
however, Ms. Anderson was granted until October 17, 2003, with admonitions, in which to
file the reporter's record. The record was not filed, and on October 29, 2003, Ms.
Anderson filed a fourth request for an additional 60 days in which to prepare the record. 
The request is denied and Ms. Anderson has until December 1, 2003, in which to file the
record. 

 Accordingly, we order Jami Anderson, Official Court Reporter for the252nd Criminal
District Court of Jefferson County, to transcribe and file with the Clerk of this Court a
reporter's record as required by the Texas Rules of Appellate Procedure encompassing
cause number 87636. The record shall include all argument, evidence, and exhibits
presented to the court during trial, as well as any pretrial and post-trial hearings conducted
in said cause. We further order Ms. Anderson to file the reporter's record in a manner by
which it will be received by the Clerk of this Court on or before 5:00 p.m. on Monday,
December 1, 2003. No further motions for extension of time will be considered. 

 Failure to file the reporter's record as directed by this Court's order will result in one
or more of the following:

 (1) a hearing requiring Jami Anderson to show cause why she should not be
held in contempt;

 (2) a complaint to the Court Reporter's Certification Board;

 (3) appropriate sanctions; or

 (4) abatement to the trial court for appropriate action.


 It is so ordered.

 Per Curiam

Do not publish.



" Act of May 25, 2001, 77th Leg., R.S., ch.
1491, §3, 2001 Tex. Gen. Laws 4995. However, a "money judgment for child support
rendered before the effective date of this Act [was to be] governed by the law in effect on
the date the judgment was rendered, and the former law [was] continued in effect for that
purpose," according to the same body. Id. This amendment caused the dispute now
before us. Simply put, the State argues that the change from 12 to six percent did not
apply retroactively to reduce the amount of interest which had accrued before January 1,
2002. Silas contends otherwise. Who is right depends upon application of various
concepts of statutory construction. 

 The first such rule of construction obligates us to presume that statutes and
amendments thereto operate prospectively "unless expressly made retrospective." Tex.
Gov't Code Ann. §311.022 (Vernon 1998); Reames v. Police Officers' Pension Bd., 928
S.W.2d 628, 631 (Tex. App.--Houston [14th Dist.] 1996, no writ). Next, a statute is to be
applied retroactively only if it appears by fair implication from language used that it was
the intention of the legislature to make it applicable to both past and future transactions. 
State v. Humble Oil & Refining Co., 141 Tex. 40, 169 S.W.2d 707, 708-09 (1943); Rice v.
Louis A. Williams & Assoc., Inc., 86 S.W.3d 329, 335 (Tex. App.--Texarkana 2002, pet.
denied). Third, we must also presume that the legislature intended to comply with the
United States and Texas Constitutions. Tex. Gov't Code Ann. §311.021(1) (Vernon 1998).
Consequently, interpretations of an edict which render it constitutionally infirm must be
avoided. Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d
618, 629 (Tex. 1996). For instance, a statute cannot be read as depriving one of a vested
right. Id. at 633. With this said, we turn to the dispute before us.





Application of Authority


 In reducing the interest rate to six percent, the legislature did not simply state that
the modification became effective on January 1, 2002. It added that the change applied
to "unpaid child support that became due before the effective date of this Act and for which
a court has not confirmed the amount of arrearages and rendered a money judgment." In
other words, the legislature stated that though the Act would become effective on January
1, 2002, the reduction from 12 to six percent nonetheless would apply to arrearages in
existence before January 1, 2002, which had yet to be confirmed and reduced to a money
judgment. In so reading the proviso and affording the words contained therein their
common meaning, see Tex. Gov't Code Ann. §311.011(a) (Vernon 1998) (stating that
words and phrases contained in a statute shall be read in context and construed according
to the rules of grammar and common usage), one cannot but read it as fairly implying that
the reduction was to apply to both past and future arrearages as long as they had yet to
be confirmed and reduced to an actual money judgment. Simply put, if the change is to
affect arrearages that accrued before the Act became effective, then the change must have
retrospective affect. (1) 

 Yet, our analysis is not over for another statutory provision must be taken into
consideration. It is found at §157.261(a) of the Family Code and states that a "child
support payment not timely made constitutes a final judgment for the amount due and
owing, including interest as provided in this chapter." Tex. Fam. Code Ann. §157.261(a)
(Vernon 2002). Through it, the legislature has categorized the status of the delinquent
payment as delinquent and due at the instant it becomes unpaid and memorialized the
liability, including interest thereon, in a final judgment. (2) 

 Having categorized the sum due, including interest, as a final judgment, the
legislature has also effectively vested the beneficiary of the support payment with the right
to receive the amount due, including interest, at the instant it went unpaid. Simply put, if
final relief has not been granted to one on the enforcement of a demand before
modification of the law upon which it is based, then the right to the demand is not vested. 
Walls v. First State Bank, 900 S.W.2d 117, 122 (Tex. App.--Amarillo 1995, writ denied).
However, when the demand has been merged into and recognized by a final judgment,
then it becomes a vested right which cannot be divested through retroactive application
of a law. Id. So, because the right to delinquent child support payments, including interest
thereon, is incorporated into a final judgment through legislative fiat, then, logically, the
right to the payment and interest thereon vests at the instant the delinquency arises. And,
being vested, the right cannot be denied via our interpretation of another statute. 

 So, we must avoid construing the amendment to §157.265(a) in a manner that
divests a beneficiary of delinquent child support of its vested right to receive the arrearage
and interest thereon encompassed by the final judgment arising via §157.261(a). And, to
construe the amendment to be retroactive would be to effectively divest the beneficiary of
a portion of his entitlement encompassed by the final judgment. This is so because
reducing the interest which already 1) had accrued at 12 percent and 2) had been
encompassed within a final judgment via §157.261(a) would be to divest the beneficiary
of the payment (or judgment creditor) of a portion of his vested right. Consequently, the
amendment to §157.265(a) cannot be interpreted as retroactive. (3) 

 Finally, the record at bar discloses that a significant portion of the arrearage due
from Silas accrued before the effective date of the amendment to §157.265(a). 
Additionally, in calculating interest on the entire sum (which had effectively been reduced
to a final judgment via §157.261(a) and thereby constituted a vested right) the trial court
utilized a rate of six percent. It did not differentiate between unpaid support which accrued
before the amendment to §157.265(a) became effective and unpaid support accruing
thereafter. Given our construction of the amendment to that statute and our conclusion
that its effect is not retrospective, the trial court was obligated to use a rate of 12 percent
when calculating the interest accruing upon the pre-January 1, 2002 delinquency. Thus,
it erred.

 We reverse the April 30, 2002 order approving and adopting the master's report and
remand the cause for further proceedings.


 


 Brian Quinn

 Justice 

 
1. We note that the court in In re A.J.R., 97 S.W.3d 833 (Tex. App.--Dallas 2003, no pet. h.) held
differently. It concluded that "unpaid child support obligations that have not been confirmed and reduced
to judgment as of January 1, 2002 are subject to the twelve percent interest rate until January 1, 2002. On
that date, however, interest begins accruing on those unpaid obligations at the new six percent rate." Id. at
835. The reason for this was because "[t]here is nothing to suggest that the legislature intended the changed
rate to apply retroactively." Id. In reaching that conclusion, the court did not mention the passage in the
enabling legislation stating that the change "applies to . . . unpaid child support that became due before the
effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered
a money judgment." Nor did it explain why that language failed to evince an intent to apply the changes
retroactively. Nor did the court attempt to explain what it believed that passage to mean. Instead, it read
into the enabling legislation wording that divided unpaid child support into different categories, those
categories being unpaid support that accrued before January 1, 2002, and unpaid support that accrued after
January 1st. The former would accrue interest at 12 percent and the latter at six, according to the court. 
Yet, the legislators did not themselves make that distinction; indeed, they expressly rejected it by stating that
the new rate applied to both "child support payment[s] that become due on or after the effective date of [the]
Act and . . . unpaid support that became due before the effective date . . . ." Act of May 25, 2001, 77th Leg.,
R.S., ch. 1491, §3, 2001 Tex. Gen. Laws 4995. In short, it appears that the court in A.J.R. gave effect to
merely that portion of the enabling legislation stating that the change affected "child support . . . that
becomes due on or after the effective date of [the] Act." Thus, we choose not to follow the holding and
instead conclude that the reduction was intended to apply to support payments becoming delinquent after
January 1, 2002, as well as support that became delinquent prior thereto and had yet to be confirmed and
incorporated into a monetary judgment.
2. We realize that other sections of the Family Code provide for actually confirming the amount of
arrearage which the legislature has already categorized as a "final judgment" and reducing that "final
judgment" into a "cumulative money judgment". Tex. Fam. Code Ann. §157.263(a) (Vernon 2002). Yet,
because the legislature expressly decreed that the delinquency constitutes a "final judgment" at the time the
payment becomes delinquent, we are bound by its categorization for purposes of this appeal. See Tex.
Gov't Code Ann. §311.011(b) (Vernon 1998) (stating that words and phrases that have acquired a technical
or particular meaning shall be construed accordingly). We do not address, however, whether in using the
term "final judgment" the legislature sought to perform the inherently judicial function of adjudicating a
dispute. It may well be that the lawmakers simply intended to cloak the unpaid child support payment and
interest on it with indicia of finality given that the trial court previously ordered that the amounts be paid as
they accrue. 
3. So, while we disagree with the reasoning of the court in In re A.J.R., we nonetheless arrive at the
same result.