Pamela H. DOZIER, Appellant,

v.

**TEXAS EMPLOYMENT COM-
MISSION and KLH Medi-
cal, Inc., Appellee.**

No. 14–98–01096–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 2001.

Jeff Larsen, Houston, for appellants.

Fred Lee Butler, Houston, William D. Kimbrough, Austin, for appellees.

Panel consists of Justices ROSS A. SEARS, NORMAN LEE, and ERIC ANDELL.*

## MAJORITY OPINION

NORMAN LEE, Justice (Assigned).

The Texas Workforce Commission [1] reconsidered Pamela H. Dozier's eligibility for unemployment benefits, and found KLH Medical, Inc. ("KLH") had not employed her during a necessary period. After exhausting administrative procedures, Dozier pursued a *"de novo* substantial evidence" appeal to Harris County Civil Court at Law Number Three. The judge found there was "substantial evidence" at the time of the agency hearing to support the TWC's conclusion that Dozier was not KLH's employee. We affirm.

### I. Factual Summary

#### A. The disputed contract

The writings Dozier and KLH signed are not ambiguous. If there was no testimony, the disputed contract would clearly be an employment contract. Unlike the disputed contract, a second contract for an undisputed period states Dozier would be an "independent sales person." Under the disputed contract, KLH paid Dozier a draw against sales commissions. Dozier received her commission for (1) "making the transition," (2) for increasing sales to All-Health accounts that were already KLH customers, and (3) for new accounts she brought independently of normal KLH marketing. However, in addition to the duties for which she was paid, the contract also required Dozier to provide "concepts, ideas, and strategy, and to help do the work necessary" to accomplish KLH's marketing plans or goals. The contract further required her to help answer the phone and receive customer orders. Thus, if sales were attributable to her personal activities that were independent of KLH's primary marketing program, she received commissions. The company was to provide "an adequate environment" to perform her responsibilities. KLH would also provide the "marketing tools necessary to make the transition of All-Health [her defunct medical supply company's] accounts to KLH accounts." The disputed contract provides no payment for her work required on KLH's primary marketing activities.

The parties were to review the contract after the period from November 1, 1993 to January 31, 1994. The document named three possibilities for this review, other than terminating the relationship. The parties could:

1) Continue the existing contract;
2) Hire Pam Dozier as a full time employee; or,
3) Enter an independent salesperson contract.

The option to *"enter"* an "independent sales person contract" instead of "continue this existing contract" suggests "this existing contract" was not an "independent sales person contract." The written contract, however, was not the only evidence before the TWC.

#### B. Evidence before the county court supporting the TWC's decision

Upon appeal to the county court, there was no objection to admission of the transcript of the TWC's evidentiary level hearings. The hearing before the TWC on whether to delete money charged to KLH

---

* Senior Justices Ross A. Sears, Norman Lee, and Former Justice Eric Andell sitting by assignment.

1. The Texas Workforce Commission, or "TWC," was known as the Texas Employment Commission when it ruled upon this case. For simplicity, we will refer to it as the TWC throughout.

occurred in two stages, but was all in the same transcript. When it became apparent in KLH's appeal that Dozier's benefits should also be at issue, the TWC continued the hearing to provide Dozier the required notice.

### 1. The first hearing found in the TWC transcript[2]

The hearing officer noted the TWC could not apply the evidence from the first hearing date to Dozier. Nevertheless, this evidence was relevant to a judicial evaluation of what evidence existed at the time of the second hearing.

At the first hearing, the company president ("Mr. Herbert King") testified Dozier was not an employee during the term of the first contract. He explained that Dozier was using the transition of customers to KLH to liquidate the inventory KLH had purchased from her partner in All-Health, her defunct medical supply company. He testified KLH never gave Dozier any instructions because she was supposed to be the expert. He testified the second contract was a renewal of the first. He further testified that if he sent the TWC any wage reports, it was a mistake[3].

### 2. The second hearing

Proceedings resumed on May 24, 1995, after official advance notice to Dozier that the TWC was going to reconsider her eligibility for employment benefits. At issue were whether payments to Dozier from KLH should be included as wages in Dozier's base period, and whether the TWC would charge KLH as a result.

#### a. Dozier's testimony

Dozier testified first. She said her job title was Marketing Consultant. While her contract indicated hiring her as a full-time employee was an "option" when the contract came up for review, she said she worked eight to five, five days a week at KLH during the whole contract. Dozier explained that KLH did not tell her to work eight to five, Monday through Friday, but that it was necessary to accomplish her duties under the contract. KLH subtracted none of the typical employee deductions from her pay. Dozier testified KLH provided a written and oral review of her performance (which she contended supported her claim to be an employee) near the time the contract was to be reviewed. She admitted she could have done some of her work at home.

#### b. Henry King's testimony

The vice-president of KLH, Henry King, was Herbert King's son. Henry King represented KLH at the second hearing. He testified Dozier had chosen her title as Marketing Consultant. He said she requested her draw be paid bi-monthly. Although KLH provided facilities for her, he said, Dozier was free to work anywhere she wanted to. He said if Dozier had wanted to work at home, KLH would have taken her calls for her. Further, he asserted, the company did not *require* Dozier to enter invoices in the computer system. In fact, he claimed, KLH never gave her a security code clearance to enter invoices. It is undisputed Dozier entered some invoices.

Henry King testified Dozier made the decision whether to market to potential clients by mail or by personal visits. He designed KLH's own fliers, and Dozier's

---

**2.** Pam Dozier testified before the county court at law, but her testimony added nothing that would indicate a lack of substantial evidence in existence at the time of the TWC hearing.

**3.** During the May 24, 1995 session, the hearing officer noted that he had KLH's employee lists submitted for the two relevant quarters KLH mistakenly submitted wage reports for Dozier. Her name was not on the lists.

fliers promoting KLH never crossed his desk. He explained that, although the Kings suggested she answer telephones, Dozier would not have gotten into trouble if she had not. The other independent sales people answered phones when they were in the office.

Henry King testified Dozier did not receive benefits. In contrast, an employee who worked with her, Sandy Harper, had a contract of employment, health insurance, and other benefits. He said the company gave Dozier direction by establishing sales goals. Harper had to be at work from eight to five, and received directions daily. The first contract period was, he said, a trial period to "see if this project was going to work."

### c. Patricia King–Ritter's testimony

Henry King's sister, Patricia King-Ritter, worked more closely with Dozier. King-Ritter testified that when Dozier initially approached her, King-Ritter told Dozier that KLH could not hire her. In the beginning, said King-Ritter, Pam proposed to work like Bob Granger, one of KLH's independent salespeople.

While Dozier worked for KLH, explained King-Ritter, Dozier designed her own veterinary fliers, actually directing King-Ritter in putting the flier on the computer. Besides her independent sales activities Dozier worked without supervision on a project sourcing materials for a bid by KLH to a hospital in Japan. King-Ritter testified Dozier did not train employees as Dozier had claimed. Dozier set the advertised prices "unless it was super low," partly to keep KLH price structure similar to All-Health's price structure to convert them to KLH customers.

King-Ritter testified Dozier's duties were those written on the contract, while most of the employees at KLH do not receive contracts that looked like Dozier's.

She testified the reason Dozier answered phones was that it was hard for others to know when one of Dozier's accounts was the caller. King-Ritter testified she did not supervise Dozier, but answered Dozier's questions.

KLH gave its employees a very detailed performance review. In contrast, it gave Dozier a more general review. King-Ritter testified it was to inform Dozier where she stood by providing Dozier's sales numbers, and offering helpful opinions and suggestions.

King–Ritter testified KLH entered the second contract to provide Dozier the means to repay unearned draws in her spare time. Dozier was going to work for a competitor, Medco. KLH terminated Dozier's second contract when Medco undercut KLH's prices with merchandise Medco had purchased from KLH through Dozier.

## III. Standard of Review

### A. Court of Appeals' review of county court

We must look at the evidence presented to the county court, and not the agency record alone, to determine whether the court abused its discretion. *Nuernberg v. Texas Employment Comm'n*, 858 S.W.2d 364, 365 (Tex.1993). Interpreting statutes and substantial evidence review are issues of law. Failure to analyze or apply the law correctly is an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992).

### B. The county court's appellate review of the TWC proceeding

Judicial review of sufficiency of the evidence to support a TWC ruling is a *de novo* substantial evidence review. *Id.* Even if the reviewing court would reach a different conclusion, only unreasonable, arbitrary or capricious agency decisions may

be set aside.[4] *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex.1986).

 Substantial evidence review resembles legal sufficiency review. "Substantial evidence" is more than a scintilla. *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex.1985). In fact, even if other evidence greatly preponderates *against* the agency's decision, there can be substantial evidence. *Lewis v. Metropolitan Savings and Loan Ass'n*, 550 S.W.2d 11, 13 (Tex.1977); *Browning-Ferris, Inc. v. Texas Department of Health*, 625 S.W.2d 764, 768 (Tex.App.—Austin 1981, writ ref'd n.r.e.). The reviewing tribunal may not decide factual issues. *See Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988). Review for substantial evidence is purely a matter of law. *Bank of North Am. v. State Banking Board*, 492 S.W.2d 458, 459 (Tex.1973).

 In contrast to legal sufficiency analysis, however, *de novo* substantial evi-

dence review starts with a presumption evidence existed to support the agency decision. Further, instead of reviewing the evidence the agency actually considered, the *de novo* appellant must prove "substantial" supporting evidence *did not exist* when the agency held its hearing. *See* Tex.Lab.Code § 212.202(a); *Mercer*, 701 S.W.2d at 831.

## IV. Analysis

None of the parties agree regarding the correct application of section 201.042 of the Texas Labor Code. The appellate attack is framed as evidentiary, but the parties' dispute on appeal primarily concerns what statute applies and what evidence is relevant.

Dozier's ultimate contention on appeal, as at trial, is that there was not substantial evidence her services in the disputed period failed to qualify as employment under section 201.042 of the Texas Labor Code

---

**4.** Whether Dozier's point is evidentiary or an issue of statutory construction matters little because the *de novo* substantial evidence review is simply the evidentiary test for the general "arbitrary, capricious, or unreasonable" abuse of discretion standard. *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex.1966). This test avoids determining what evidence was actually before the agency because courts are more concerned with whether the legal effect of the hearing is correct than the wisdom of the informal methods employed. *Texas Railroad Comm'n v. Magnolia Pet. Co.*, 130 Tex. 484, 109 S.W.2d 967, 970 (Comm'n App. 1937) (opinion adopted). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). Thus, instead of deciding issues of fact, the reviewing court determines whether enough evidence existed to enable someone of reasonable mind to reach the conclusion the agency reached. *Dotson v. Texas State Bd. of Medical Examiners*, 612 S.W.2d 921, 922 (Tex.1981).

Deciding a case on conflicting evidence is not intrinsically an abuse of discretion. *Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 355 (Tex.1996). Factual determinations so clearly against the great weight and preponderance of the evidence that they are *"clearly wrong and unjust,"* however, can be a contributing *factor* in assessing non-evidentiary abuses of discretion. *E.g. Trimble v. Texas Dep't of Protective & Regulatory Serv.*, 981 S.W.2d 211, 214 (Tex.App.—Houston [14th Dist.] 1998, no pet.). "[I]nstances may arise in which the agency's action is supported by substantial evidence, but is arbitrary and capricious nonetheless." *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex.1984). Examples listed in *Charter Medical*, included a denial of due process prejudicing substantial rights of a litigant; an agency relying solely upon facts of another case; or basing a decision on non-statutory criteria. *Id.* Applying the wrong statute would also be an abuse of discretion.

as a salesperson. Section 201.042 provides in relevant part:

### § 201.042. Service of Driver or Salesman

In this subtitle, "employment" includes service:

(2) of a traveling or city salesman ... who, on a full time basis, ... obtains ... orders from a wholesaler, retailer, contractor ... for resale or supplies for use in the business's operation if:

(A) the employment contract provides that the individual personally performs substantially all of the service;

(B) the individual does not have a substantial investment in a facility used in the performance of the service, except a facility for transportation; and

(C) the service is part of a continuing relationship with the principal and is not a single transaction.

TEX.LAB.CODE ANN. § 201.042 (Vernon 1996). On appeal, she mistakenly contends the presumption of employment in 201.041 applies to her, and argues that section 201.042 adds criteria that must be negated to overcome that presumption. Nevertheless, if there was not substantial evidence to support the factual determinations necessary for denial under 201.042, then her contention substantial evidence did not support the agency's decision would be correct.

KLH makes the same mistaken argument that the general definition of employment in section 201.041 applies. KLH claims, in contrast, that 201.042 only provides "guidelines" for the disposition under the legal requirements of section 201.041.

The TWC correctly explains that 201.042(2) adds categories of salespersons' services to the scope of the term "employment." To overcome the courts' procedural presumption that substantial evidence supported the agency decision, Dozier had

to negate that procedural presumption under at least one of the statutes, either 201.041 or 201.042(2).

As the Appellant points out, section 201.041 begins with a presumption of employment. The employers' testimony Dozier was free of direction and control is substantial evidence her services did not qualify as employment under section 201.041. Upon judicial review, presuming substantial evidence and indulging all inferences in favor of the agency's discretion, it takes very little evidence to overcome the presumption.

The difficult burden upon judicial review under 201.041 is even more difficult under 201.042. Instead of starting with a presumption that substantial evidence must overcome, Section 201.042 starts without a presumption. Instead, it sets up three evidentiary hurdles for inclusion as "employment." The agency has the discretion to attach little or no weight to any particular piece of evidence. Short of stipulated evidence or stipulated facts satisfying the criteria as a matter of law, it would be difficult or impossible to overturn an agency decision under 201.042 for lack of substantial evidence.

Indeed, KLH and Dozier agreed before the TWC that they had signed the written contract. The parties' written memorialization of their contract does not expressly state that Dozier personally had to perform the duties in the contract. Testimony by Harold King, Henry King, and Patricia King-Ritter provided substantial evidence before the TWC that the contract would have allowed Pam Dozier to hire someone to perform her obligations under the contract. The hearings officer was free to weigh the writing as he wished, perhaps even finding the parties had disregarded much of it and worked out a different arrangement. The

TWC's determination of what the parties' contract provided was factual, not legal[5]. The agency's administrative interest was in applying the unemployment compensation scheme to the facts of the agreement to determine whether Dozier was, or was not, employed for the several months in dispute.

As the Texas Supreme court explained in *Charter Medical,* the substantial evidence review seeks indications the agency decision was unreasonable. If there was not conclusive, uncontroverted evidence Dozier met all three criteria of 201.042(2), the agency decision was not an unreasonable application of the wrong statute. The legislature intentionally gave the agency broad discretion in assessing the information presented to it, and we have no discretion to intrude upon that factual determination.

We agree with the TWC that testimony from KLH supported the TWC's finding her services were not employment for purposes of unemployment compensation. Accordingly, we overrule the appellant's contentions. The judgment of the trial court is affirmed.

ANDELL, J., dissenting.

ERIC ANDELL, Justice dissenting (Assigned).

The TWC and the county court at law failed to interpret Pamela H. Dozier's written contract according to established rules of law. They failed to realize the writing, providing for her personally to perform all or substantially all of the services set forth in her contract as a salesperson, controlled as a matter of law. This caused the TWC and the county court at law to apply section 201.041 of the Texas Labor Code instead of section 201.042(2).[1] Applying the section that controlled before the legislature changed the law deprived Pamela Dozier of the protection the legislature plainly and expressly provided. Therefore, I respectfully dissent.

## I. Construing the Contract

Construction of an unambiguous contract is an issue of law, not of fact. Our factually deferential review does not mean

**5.** Determining whether Dozier met the statutory conditions did not require the legal precision a court would apply to a breach of contract dispute. The TWC's function was not to split legal hairs or to cut through a tangle of interactions with the razor of contract law. The statutory scheme was designed to determine facts of the relationship, not to resolve contract disputes.

The administrative process would not be suited to exacting contract analysis. Without rules of evidence, any attempt at exacting analysis would add complexity without enhancing accuracy. The TWC's sole evidentiary objective was to make an efficient, expeditious factual assessment of the parties' relationship for purposes of the unemployment compensation scheme. In Appellant's case, the agency had to assess a three to four month period.

**1.** The legislature added the provisions in section 201.042(2) to the unemployment compensation scheme specifically to protect sales-

persons like the appellant. Standing on her right to unemployment compensation, Pamela H. Dozier ended up liable for a total of $15,961.86, plus accruing interest. Ms. Dozier needed credit for the $5,600 KLH Medical paid her over several months to qualify for benefits.

The great bulk of the questions from the hearings officer clearly addressed section 201.041 instead of 201.042. KLH orally denied that the written contract provided for personal performance, and claimed what the agency had credited as wages were actually unearned draws. The agency reversed its decision she was entitled to benefits, and decided $4,173 it had already disbursed would be deductible from any future unemployment compensation. Similarly, the county court at law's judgment recites findings only applicable to 201.041.

the TWC may abandon established legal standards of contractual construction. Neither salespersons' rights nor employers' rights should depend upon *post hoc* swearing matches when applying the language of the statute to an unambiguous, written contract determines employee status as a matter of law.

The substantive law of contract construction prohibits consideration of parol evidence to contravene the intent expressed in the plain words of the written contract. *Lewis v. Adams,* 979 S.W.2d 831, 836 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (explaining that the parol evidence rule is not a rule of evidence, but a rule of substantive law). The contract is not ambiguous. The contract document is therefore conclusive evidence of what the "contract provides." The employer's subjective, oral opinions are not evidence of what the contract provides.[2]

The terms of Ms. Dozier's contract clearly contemplate personal performance.[3] The contract provides she was to transform relationships she personally had with clients into relationships between the clients and KLH Medical. Ms. Dozier was to provide "concepts, ideas, and strategy, and to help do the work necessary to accomplish these marketing goals." This language clearly contemplates Ms. Dozier personally providing and implementing ideas. The contract specifically states that "Pam Dozier is expected to help answer the phone and receive customer orders." KLH Medical was "responsible for providing an adequate environment in which *Pam Dozier can perform her responsibilities*" (emphasis added). The writing shows the parties' intent for her to perform all or substantially all of her contractual obligations personally.

## II. Agencies may interpret the law reasonably, but may not re-write it

The agency has discretion to interpret laws reasonably, as its functions require. It may not, however, violate the plain words of the statute, "no matter how expedient for administrative purposes." *Sexton v. Mount Olivet Cemetery Ass'n,* 720

---

2. It would be inappropriate to find from the employers' testimony that the contract had been modified during performance, as there was no evidence it had been modified. More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). However, circumstantial evidence from which equally plausible but opposite inferences may be drawn is not more than a scintilla because any conclusion would be speculative; thus, reasonable and fair-minded people could only reach a conclusion by surmise or suspicion. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). Harold and Henry Kings' assertions about Ms. Dozier's duties under the contract could support equally—or not at all—a surmise it had changed or a surmise they were making parol statements interpreting the writing favorably to themselves.

3. Section 201.042(2)(A) does not use the language "expressly provide." Nor does the statute require the contract to use the magic words "personally perform." In *Bruni v. Bruni,* 924 S.W.2d 366 (Tex.1996), the statutory requirement for the contract was that the "[t]erms of the agreement . . . are not enforceable as contract terms unless *provided by the agreement.*" See *Bruni,* 924 S.W.2d at 368 (interpreting section 154.124(c) of the Texas Family Code) (emphasis added). The Texas Supreme Court held that the statute did not require the agreement to use any "magic words" to "provide" it was enforceable as a contract. Instead, the statute was satisfied because the agreement *expressed the parties' intent* that the agreement be enforced as a contract. *Id.* Here, as in *Bruni,* "magic words" are unnecessary because the contract language "provides" for personal performance by expressing the parties' intent.

S.W.2d 129, 137–38 (Tex.App.—Austin 1986, writ ref'd, n.r.e.). In ascertaining legislative intent, words and phrases must "be read in context and construed according to the rules of grammar and common usage." TEX.GOV'T CODE ANN. § 311.011 (Vernon 1998).

In *Sexton*, the Austin court of appeals explained:

> [W]e may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are forbidden when the legislative intent may be gathered from a reasonable interpretation of the statute as it is written. Implications are permissible only when the court has first concluded that the Legislature obviously intended the agency to have the power it claims by implication.

*Sexton*, 720 S.W.2d at 138. The case the Austin court cited in support of this explanation involved agency interpretation of a statutory standard. *See Commonwealth of Massachusetts v. United N. & S. Dev. Co.*, 140 Tex. 417, 168 S.W.2d 226 (1942). In *Commonwealth*, a statute required two sureties to guarantee the obligor's performance. The agency in *Commonwealth* claimed having one surety guarantee the other surety's guarantee met the statutory standard. The Texas Supreme Court found this "interpretation" contrary to the language of the statute. Instead, it found, the statute required each surety to guarantee directly the primary obligor's commitment. Accordingly, the agency decision based upon an error of law could not stand.

## III. Applying the Statutes

The TWC claims section 201.042(2) does not apply. Statutory construction is a question of law that we review de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). In the present case, as in *Sexton* and *Commonwealth*, our factual deference does not mean we should rubber-stamp mistakes of law. Courts should construe the intended meaning of statutes from the language if that language is plain. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). "[E]very word of a statute is presumed to have been used for a purpose, and the cardinal rule of statutory construction requires that each sentence, clause, phrase and word be given effect if reasonably possible." *Reames v. Police Officers' Pension Bd. of Houston*, 928 S.W.2d 628, 632 (Tex.App.—Houston [14th Dist.] 1996, no pet.).

The TWC acknowledges that the legislature *added* the provisions now in section 201.042(2) to the services already qualifying as "employment" under 201.041. Section 201.042(2)'s separate criteria for independence support this.

Subsection (2) specifically does not add services meeting certain litmus tests of independence to the definition of "employment." Subsection (2)(A) excludes from its scope salespersons whose contracts do not provide for them personally to perform substantially all of their services. Subsection (2)(B) excludes services by salespersons who have a substantial investment in a facility used to perform. Subsection (2)(C) excludes service on only a single transaction from 201.042(2)'s augmentation of 201.041. Thus, evidence the contract did not require personal performance, of substantial capital invested in a facility used to perform, or of service for more than a single transaction would put a salesperson's services outside the scope of services 201.042(2) adds to the definition of "employment."

The TWC contends KLH Medical's testimony personal performance was not required excluded Ms. Dozier's services from

201.042. A key distinction between the measures of independence in section 201.041 and 201.042(2)(A) appears in the language controlling the scope of inquiry. Section 201.041 specifies the arrangement between the parties *"under the contract and in fact."* Section 201.042(2)(A) restricts the scope of inquiry about personal performance to what the *"contract provides."*[4] If what the "contract provides" would also encompass what the parties felt the arrangement was "in fact," the words "in fact" in section 201.041 would be superfluous. Conversely, had the drafters intended to add issues about whether Ms. Dozier was required "in fact" to perform the services personally, the legislature demonstrated in section 201.041 that it knew how to say so.

On Ms. Dozier's appeal to us, the TWC contends 201.041 applies. It contends Ms. Dozier fails all three criteria for independence under 201.042. The agency contends:

1. Her "primary duty" was exploiting her personal contacts for KLH, but the contract did not provide for Pam Dozier personally to perform substantially all of her duties under the contract (also contrary to its other written terms).

2. Recruiting personal client relationships from her defunct business was a "substantial investment in a facility used in the performance of the service."

3. A relationship reviewable and extendable after three months is not a continuing relationship (as opposed to a single transaction).

Ignoring the provisions' clear intent for Ms. Dozier personally to perform is an abuse of discretion, a failure to follow the law. The TWC appears arbitrary and capricious in further contending her personal contacts were a "substantial investment" in a "facility." It appears even more arbitrary and capricious for the TWC to claim an indeterminate relationship, reviewable after three months, was not a continuing relationship, as opposed to a single transaction. Our record, the TWC's argument below, and the TWC's argument on appeal all indicate (1) the agency misconstrued the contract and applied the wrong law, and (2) substantial evidence did not exist when the TWC heard this case to satisfy the correct statutory provision.

## 2. Disposition

If the claims in this case were severable, we could reverse and remand only the unemployment compensation claim about which the appellant complains. *Otis Elevator Co. v. Bedre,* 776 S.W.2d 152, 153 (Tex.1989) (holding a partial remand is proper only when issues are severable). Severance is proper when: (1) the controversy involves more than one cause of action; (2) the severed cause would be the proper subject of a independently asserted lawsuit; and (3) the severed causes must not be so intertwined as to involve the same facts and issues. In certain instances, courts have applied a fourth requirement that the severed causes of action cannot relate to the same subject matter. *Hayes v. Norman,* 383 S.W.2d 477 (Tex. Civ.App.1964, writ ref'd, n.r.e.).

The only possibility of meaningful relief on the unemployment claim is reversal of the entire trial court judgment. The contract recovery involves a different theory, but is inextricably intertwined with the facts of the unemployment compensation claim. Both claims depend upon whether the draws Ms. Dozier received were

---

4. Incidentally, the second contract did not provide for personal performance, and expressly stated Ms. Dozier would be an independent salesperson.

earned wages or simply a debt. *See generally, Twyman v. Twyman,* 855 S.W.2d 619, 623–624 (Tex.1993).[5]

Here, as in *Twyman,* there was no court precedent in the relevant area to guide the parties or the court below. If the TWC considered this case under the correct standard, and the appellant won, the result would be inconsistent with the contract recovery. If Ms. Dozier owes the draws back to KLH Medical, they were not earned wages. Whatever was wages, she does not owe. As a result, if the appellant succeeded on her unemployment compensation claim, she would be relieved of her debt to the TWC because the draws were *not* a debt, and owe a similar amount to KLH Medical because the same draws *were* a debt. The conflicting findings would thus cancel out any meaningful relief on her unemployment compensation claim.

As a result of legal errors, the court did not deduct the commissions from draws to arrive at either *substantial* evidence of the amount of wages at the time of the TWC proceeding or a *preponderance* of evidence showing the amount of KLH's contractual claim. The trial court erred in construing both contracts presented to it. The judgment indicates the trial court thought (1) parol evidence supported the TWC's interpretation of the first contract, and (2) the second contract cut off the appellant's right under the first contract to commissions for six months after termination. The second contract terminated the first, but did not cut off Ms. Dozier's right to the commissions.[6] Further, the trial court

**5.** In *Twyman,* the wife in a divorce proceeding recovered for her husband's negligent infliction of emotional distress under established Texas Supreme Court precedent. The trial court had incorporated the judgment on the negligent infliction claim into a divorce decree. Between trial and the Texas Supreme Court's consideration, negligent infliction was abolished. The Texas Supreme Court reversed, but it officially recognized and set standards for intentional infliction of emotional distress.

The divorce decree had taken the husband's same cruel behavior into account in awarding the wife a disproportionate share of the community estate. The Texas Supreme Court found that allowing recovery of both a disproportionate share of the marital estate for cruelty and allowing separate recovery for intentional infliction of emotional distress would constitute a double recovery. Allowing recovery upon the intentional infliction claim would be inconsistent with the unappealed, disproportionate division of the marital estate.

The court could have left the unappealed division in place, and reversed and rendered the negligent infliction claim. Instead, the court found the interest of justice required it to allow the plaintiff an opportunity to try the emotional distress claim under the correct theory. *See also Edinburg Hosp. Authority v.*

*Trevino,* 941 S.W.2d 76, 79 (Tex.1997) (remanding in the interest of justice when the case was tried on the wrong legal theory); *Boyles v. Kerr,* 855 S.W.2d 593, 603 (Tex. 1993) (same). Since the issues were intertwined, it remanded both the emotional distress issues and the inconsistent property division for trial.

**6.** Ms. Dozier was entitled to accrue commissions on her accounts for six months after the employment contract terminated. KLH Medical counterclaimed below that a post-termination contract extinguished her right to those commissions, leaving her indebted for $4,268.99 in draws she had received against future commissions.

In fact, the second contract specifically provided for KLH to pay out the full commission on accounts Ms. Dozier brought to KLH before the first contract terminated. If she failed to contact those customers for a three month period, it specified percentages of payouts KLH could *apply to the draws.* Without evidence of commissions that would have accrued during the six months, however, the second contract cannot support a claim the $5,600 paid to her was not all wages. The court affirmed the TWC decision, "reimbursed" $4,268.99 KLH had not proven she owed, and awarded $7,519.87 in attorney's fees for recovering the draws. The appellant

considered whether a preponderance of the evidence showed the draws were a debt based upon evidence in existence at the time of the TWC hearing. KLH Medical did not produce evidence of the commissions because its contract theory was repugnant to them. Because it misconstrued the contracts, the court made its contract decision without crucial evidence.

If the erroneous breach of contract judgment is allowed to stand, Ms. Dozier will likely have to overcome possible conflicting findings, collateral estoppel, or the law of the case doctrine. If she is allowed to contest the issue of how much of the draws were commissions, and wins, her rights will still be frustrated. The debt that the TWC will only collect from future unemployment compensation will be cancelled, but she will face KLH's executable judgment for the same draws the TWC found were earned wages. In the interest of justice, and to avoid inconsistent results, we should reverse and remand the entire case to the trial court for retrial under the correct principles of law.

**Conclusion**

This case illustrates the need for judicial review to remedy quasi-judicial executive error. Pamela Dozier earned unemployment protection by working under a written contract providing for services that clearly required personal performance. To add protection for commissioned sales employees, section 201.042(2) added her work to the definition of "employment." Section 201.042(2)(A) says the provisions of the contract are an indicator whether she qualified for this protection. Determining whether she was obligated "in fact" to perform personally would improperly apply 201.041's scope of inquiry. There is no evidence she failed to meet any condition in 210.042(2) necessary to negate independence. The trial court abused its discretion by failing to properly analyze the law and apply it to the facts. Therefore, I respectfully dissent.

does not directly challenge the contractual recovery.