**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed January 12, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00051-CV

---

### SECURE PROPERTIES, INC., Appellant

### V.

### CITY OF HOUSTON, Appellee

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2010-13306**

---

## M E M O R A N D U M   O P I N I O N

Appellant Secure Properties, Inc. (SPI) petitioned the district court for judicial review of two orders issued by the City of Houston Building and Standards Commission. The district court signed a judgment affirming the Commission's decision, and SPI appealed to this court. We affirm in part, and reverse and remand in part.

### BACKGROUND

Under the Texas Local Government Code subchapter entitled "Quasi-Judicial Enforcement of Health and Safety Ordinances," a municipality may provide for the

appointment of a Building and Standards Commission to hear and determine cases concerning alleged violations of the municipality's health and safety ordinances. *See* TEX. LOC. GOV'T CODE ANN. §§ 54.031–.044 (West 2008 & Supp. 2011). The City of Houston's Building and Standards Commission conducts administrative hearings pursuant to this authority. *See generally* Houston, Tex., Code of Ordinances ch. 10, art. IX, §§ 10-341–360 (2011) (formerly §§ 10-391–410).

SPI owns rental property consisting of two wood-framed buildings at 2308 and 2310 Winbern Street in Houston, Texas. On January 15, 2010, the City gave SPI written notice that the Commission would hold a public hearing concerning alleged violations of the Houston Code of Ordinances on the property on February 3, 2010. The notice informed SPI that it could present evidence and witnesses concerning the alleged violations at the hearing.

SPI alleges that prior to the hearing, City officials gave SPI president Christopher Hageney inconsistent information about whether the hearing should be postponed pursuant to City policy. SPI does not argue that it received written or verbal confirmation that the hearing was cancelled or rescheduled.

Hageney appeared at the hearing on behalf of SPI, confirmed that he received notice of the hearing, and requested a continuance. The Commission denied the request. The City then presented photographs and testimony regarding the alleged violations. Hageney did not cross-examine the City's witness or introduce any evidence.

The City recommended the following deadlines for remediation of the Building 1 violations: 10 days to obtain permits to secure the structure to specifications; 10 days to obtain repair or demolition permits; and 30 days to repair or demolish the structure. The City recommended the following deadlines for remediation of the Building 2 violations: 10 days to obtain repair permits; and 30 days to repair the structure. In response, Hageney informed the Commission that he needed at least 90 days to get bids from contractors, obtain the permits, and complete the repair work on the two buildings.

In two separate orders, the Commission (1) found that notice was properly given; (2) concluded that both Building 1 and 2 were in violation of numerous Code of Ordinances provisions; (3) adopted the City's recommendation for the repair or demolition of Building 1; and (4) gave SPI 15 days to obtain repair permits and 60 days to repair Building 2. The Commission informed Hageney: "I think if you work with the City on this . . . they can work and adjust the time sometimes when you're showing good effort."

SPI petitioned the district court for judicial review of the Commission's decision on March 1, 2010. SPI invoked the district court's inherent authority to review SPI's complaint that the Commission's actions violated SPI's constitutional rights, as well as the district court's authority to review the Commission's findings for "substantial evidence" pursuant to section 54.039 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 54.039. Specifically, SPI claimed that the Commission's orders should be reversed because (1) the Commission's denial of SPI's request for a continuance violated SPI's procedural due process rights because "SPI was notified [by City officials] that the hearing would be reset"; and (2) the Commission's findings are not "reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole."[1]

The City filed a summary judgment motion, arguing that it was entitled to judgment as a matter of law on SPI's arguments. The district court granted summary judgment in favor of the City, effectively affirming the Commission's decision.

In four issues on appeal, SPI argues that (1) the district court's judgment is erroneous to the extent that it applied the wrong standard of review to SPI's procedural due process challenge; (2) the City failed to show entitlement to a ruling as a matter of law that the Commission's actions did not violate SPI's procedural due process rights, and the evidence conclusively establishes a procedural due process violation; (3) the

---

[1] SPI listed additional grounds for challenging the legality of the Commission's decision, but SPI does not appeal the district court's rejection of those arguments.

Commission's factual findings regarding the ordinance violations are not supported by substantial evidence; and (4) the procedural due process violation was not remedied by the City's offer in the district court to agree to a proposed judgment remanding the case for a rehearing, because SPI was entitled to a *de novo* hearing.

ANALYSIS

## I.     Standards and Authority for Judicial Review of the Commission's Decision

The right to appeal the decision of an administrative body exists if (1) such right is statutorily created, or (2) the complained-of action violates a person's constitutional rights. *See Firemen's & Policemen's Civil Serv. Comm'n of City of Fort Worth v. Kennedy*, 514 S.W.2d 237, 239 (Tex. 1974) ("[A]n inherent right of appeal from an administrative body created by an act silent on the question will be recognized only where the administrative action complained of violates a constitutional provision."); *see also Smith v. Nelson*, 53 S.W.3d 792, 795 (Tex. App.—Austin 2001, pet. denied) ("[T]here is no automatic right to appeal an administrative decision that does not violate the appealing party's constitutional rights; such a right to appeal exists only if legislatively granted.").

Both types of judicial review are authorized in this case, and each involves a separate inquiry governed by a separate standard of review. *See* TEX. LOC. GOV'T CODE ANN. § 54.039 (authorizing appeal to district court for judicial review of Commission decisions for a hearing under substantial evidence rule); *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 15–16 (Tex. 1977) (holding that a reviewing court's conclusion that administrative body's factual findings are supported by substantial evidence does not preclude separate inquiry into whether the administrative body acted so arbitrarily as to violate a party's right to due process); *Perkins v. City of San Antonio*, 293 S.W.3d 650, 653 n.2 (Tex. App.—San Antonio 2009, no pet.) ("We note . . . that in addition to reviewing whether substantial evidence supports the Board's order, an arbitrary action of an administrative agency cannot stand, including any action that deprives a party of due process; therefore, the trial court also is permitted to consider whether the proceedings

4

before the Board satisfied the requirements of due process.").

To survive appeal, administrative proceedings must meet the federal and state constitutional requirements of due process of law and the rudiments of fair play. *See Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 772 (Tex. App.—Austin 2005, no pet.) (citing *Tex. Health Facilities Comm'n v. Charter Med.—Dallas, Inc.*, 665 SW.2d 446, 454 (Tex. 1984)); *Grace v. Structural Pest Control*, 620 S.W.2d 157, 160 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.). Administrative hearings are not required to measure up to judicial standards, but even administrative hearings must not be so arbitrary or inherently unfair that they deny the parties due process of law. *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 250 (Tex. App.—Fort Worth 2007, pet. denied) (citing *City of Corpus Christi v. Pub. Util. Comm'n*, 51 S.W.3d 231, 262 (Tex. 2001)); *Grace*, 620 S.W.2d at 160 (citing *Lewis*, 550 S.W.2d at 15–16). A claim regarding the deprivation of constitutional rights by an administrative proceeding presents a question of law subject to *de novo* review on appeal. *See Lee v. City of Houston*, No. 14-05-003366-CV, 2006 WL 2254401, at *3 (Tex. App.—Houston [14th Dist.] Aug. 8, 2006, pet. denied) (citing *Granek*, 172 S.W.3d at 771–72).

Additionally, any owner aggrieved by a Building and Standards Commission decision may present a petition to a district court seeking judicial review of the Commission's findings under section 54.039 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 54.039(a). The district court "may allow a writ of certiorari directed to the commission panel to review the decision." *Id*. § 54.039(b). The district court's judicial review under this provision "shall be limited to a hearing under the substantial evidence rule," and the district court "may reverse or affirm, in whole or in part, or may modify" the Commission's decision. *Id*. § 54.039(f). When conducting a substantial evidence review, the reviewing court must affirm an administrative order supported by any quantum of evidence greater than a scintilla. *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792–93 (Tex. 1995). Whether substantial evidence supports the Commission's decision is a question of law; therefore, we perform

our substantial evidence review *de novo* without deference to the district court's conclusion on the same issue. *See Lee*, 2006 WL 2254401, at *2 (analyzing identical "substantial evidence" judicial review provision applicable to municipality decisions regarding dangerous structures, as authorized by Texas Local Government Code sections 214.001–.005 (citing *Tex. Dep't of Pub. Safety v. Jackson*, 76 S.W.3d 103, 106 (Tex. App.—Houston [14th Dist.] 2002, no pet.))).[2]

With these standards of review in mind, we address each of SPI's issues out of order.

## II.    SPI's Challenges to the District Court's Judgment

### A.    Procedural Due Process

SPI argues in Issue 2 that the district court erred in concluding that SPI's procedural due process rights were not violated. Specifically, SPI complains that (1) the City failed to make any legal arguments regarding certain factors relevant to a procedural due process analysis; and (2) the undisputed evidence establishes a procedural due process violation.

The City presented the district court with relevant authority and correctly explained that "[p]rocedural due process requires reasonable notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). The City's argument to the district court was supported by the following undisputed facts: Hageney (1) received written notice, (2) appeared at the hearing, and (3) had an actual opportunity to be heard, cross-examine witnesses, and present evidence. The City concluded that SPI's due process rights were not violated because "[t]he [r]ecord conclusively establishes that [SPI] received

---

[2] This standard of review is not inconsistent with the *de novo* standard of review applicable to a trial court's conclusion that the movant is entitled to summary judgment "as a matter of law." *See* TEX. R. CIV. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The parties do not challenge and we do not review the propriety of the City's use of summary judgment procedures to resolve the exclusively legal questions that are raised in an appeal from an administrative hearing to a district court. However, we note that the City conceded at oral argument that it since has abandoned the use of summary judgment procedures to resolve such appeals.

reasonable notice of the hearing and an opportunity to be heard—at a meaningful time and in a meaningful manner."

SPI contends that the City's argument is incomplete because "[e]xactly what constitutes due process in a given situation is measured by a flexible standard that depends on the practical requirements of the circumstances." SPI argues that the City should have addressed this "flexible standard" and analyzed the three factors relevant to its application: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally protected interest under the procedures used and the likely benefit of any additional procedures; and (3) the government's interest, including the fiscal and administrative burdens, that additional or substitute procedural requirements would entail. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Than*, 901 S.W.2d at 930. SPI complains that the City did not show entitlement to judgment as a matter of law because the City failed to identify or present evidence regarding these factors.

Because SPI does not seek the imposition of additional or substitute procedures contemplated by the *Mathews/Than* factors, the City had no need to address them in its argument to the district court. *See Mathews*, 424 U.S. at 333, 349 (recipient of disability benefits would have been provided with evidentiary hearing had he sought reconsideration of administrative decision to terminate benefits, and due process did not additionally require evidentiary hearing prior to that decision); *Than*, 901 S.W.2d at 932 (student was provided notice and opportunity to be heard prior to disciplinary dismissal, but due process additionally required hearing officer to grant student's request to be present during presentation of evidence against him unless other circumstances justified ex parte presentation of evidence). SPI does not challenge the sufficiency of the written notice received by Hageney or argue that the Commission's existing hearing procedures actually prevented Hageney from having an opportunity to be heard, present evidence, or cross-examine witnesses. Rather, SPI argues that the Commission's denial of Hageney's request for a continuance—after he made it known to the Commission that he was

7

unprepared because he "was told [the hearing] would not go forward by the City's representatives"—deprived SPI of its due process right to a meaningful opportunity to be heard and "to present its objections to the testimony of the City, present controverting evidence, and cross examine witnesses." We conclude that the City's legal arguments to the district court on this issue were sufficient.

SPI also argues that the district court's judgment is erroneous because the evidence conclusively establishes that SPI suffered a procedural due process violation.[3] Not every denial of a requested continuance constitutes an effective denial of a constitutionally-guaranteed due process right. *See State v. Crank*, 666 S.W.2d 91, 94–95 (Tex. 1984) (concluding that under the circumstances, the administrative body's denial of continuance did not effectively deprive Crank of his "due process rights to fair representation"). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," and such a determination depends on the circumstances in each case. *Id.* (civil appeal from order of the state Board of Dental Examiners revoking Crank's license; applying rule to administrative body's denial of Crank's request for continuance (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964))). The circumstances in this case do not reveal a procedural due process violation.

SPI president Hageney appeared at the hearing on behalf of SPI and requested additional time to prepare:[4]

---

[3] SPI also argues that, at a minimum, the uncontested summary judgment evidence "raises a genuine issue of material fact" regarding its asserted procedural due process violation. The issue of whether the Commission violated SPI's procedural due process rights is a legal question, not a factual one. *See Lee*, 2006 WL 2254401, at *3 (citing *Granek*, 172 S.W.3d at 771–72). No other "factual issue" exists because, as SPI points out, the City does not dispute SPI's version of the events relevant to this legal inquiry. We therefore reject this additional argument for reversing the district court's judgment.

[4] These excerpts are taken from a purported transcript of a recording taken at the administrative hearing, which was attached as an exhibit to the City's summary judgment motion. SPI does not challenge the City's characterization of this or any other exhibit to its motion as a true copy taken from the certified record of the administrative hearing. The certified record of the administrative hearing does not actually appear in the clerk's record as a return on the trial court's writ of certiorari. However, neither party assigns error to this point. Therefore, for purposes of this appeal, we accept the record as true and complete.

8

I've been in communication with [the City] and I wasn't prepared.  I was told to come down here and say that the repairs were on their way.  So I didn't bring any photos or any evidence on my behalf. . . .  [A]s soon as I received that, I did start calling you.  So I'm not — I just — I would like, you know, as my right to have time to reset and to continue the repairs.  I'm an owner here trying to comply.

*            *            *

I did receive the certified notices[,] which is why I'm here.

*             *            *

What I'm saying is prior to receiving that notice, prior to receiving the notice to come to [the] hearing, I didn't realize I was under any violation.  I didn't — I received a notice saying come to a hearing.  I immediately called, met an inspector.  I understand that your process hasn't change[d].  I would be contacted[,] whether by certified mail or whatever.  And I would go out and meet an inspector.  The inspector would say I want these repairs done.  And it happened on this property in 2005 when the inspector signed off [without a hearing]. . . .  So I would like the opportunity — you have an owner here trying to comply.  I'd like the opportunity to continue to continue with what we're doing.  We only met one week ago and already probably a significant portion or a third or half of the repairs are done.  I will have the rest of them done within the 90-day period.

*             *            *

I have no photos and nothing to offer as evidence.  And I would have come — I would have taken a different tact [sic] as opposed to trying to immediately comply with the recommendation.  I received a notice to come to this hearing.  What is my understanding is normal is to receive a notice that I'm in violation, to go meet the inspector and try to comply before you go to [a] hearing.  I haven't been afforded that.  I'm just asking that if — can I continue to do the repairs?

*             *            *

I think there's a difference in the way — in the manner in which I . . . do the repairs after the hearing takes place.  I'm never — I've been in real estate and worked with this organization for many years under many different directors.  I've never been to [a] hearing and I've always — I have been cited on things in the past and I have always complied and I've never been to [a] hearing.  I was not afforded that possibility under this scenario.

*             *            *

I was under the understanding that was what was going to happen or else I would have taken photos and have bids and been able to tell you that I can complete these repairs within this period of time.  I — I don't have any information.[5]

The Commission voted to deny SPI's request for a continuance.

During SPI's appeal to the district court, SPI proffered for the first time an affidavit by Hageney, in which he states that a City official told Hageney that the hearing should not have been scheduled because "the City has a policy of not scheduling hearings with property owners who are attempting to comply with violations."[6]  Hageney states that the official informed Hageney that if he met with inspectors and had the repairs underway, the scheduled hearing would be "postponed" for 60 days.  Hageney followed these instructions.  He attended a meeting with City officials on the day of the hearing, where he learned that the City intended to go forward with the hearing because the file contained no notation that the hearing should be postponed "according to the agreement between SPI and the City."  After that meeting, a City inspector told Hageney, "[D]on't worry, we will take care of this."  An hour or two later, the official who originally discussed the City's policy with Hageney told him that she noted that the hearing "should be postponed" in an email, and instructed Hageney to ask for additional time "to instigate repairs."  In response, the City informed Hageney that it planned to "recommend" an additional 60 days for SPI "to instigate repairs."  Hageney characterizes the City's decision to "go forward with the hearing" as a violation of its asserted promise to

_____

[5] When the Commission noted that it had the option to give SPI a 90-day compliance period at the end of the hearing, Hageney explained why this solution was not a sufficient alternative to a continuance: "The difference would be that I would have to get a different set of permits if we go through with this hearing. . . .  [I would have to get an] occupancy permit[,] which would require me to bring the entire property up to code as opposed to repairing the damages that they have."

[6] The parties dispute on appeal whether the district court's review of SPI's procedural due process complaint was limited to the record developed at the administrative level, or if the parties could adduce new evidence for the first time on appeal to the district court.  SPI complains that the City failed to preserve this issue because it failed to object to Hageney's affidavit in the district court.  We do not decide either issue because we can affirm the district court's judgment by assuming without deciding that the district court properly could have considered the newly adduced evidence.  *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion . . . that addresses every issue raised and necessary to final disposition of the appeal.").

10

"postpone" the hearing or "recommend" an additional time for repairs.

We do not agree that these circumstances indicate that the Commission's denial of SPI's motion for continuance was arbitrary, an abuse of discretion, or an effective denial of SPI's due process right to an opportunity to be heard at a meaningful time and in a meaningful manner. *See Crank*, 666 S.W.2d at 94–95. SPI unequivocally admits that it had notice of the hearing, and it does not contend that any City officials ever confirmed that the hearing was postponed according to "policy" in response to SPI's remedial actions. The fact that SPI met with City officials to discuss the status of the postponement on the day of the hearing, as well as the fact that SPI actually attended the hearing and requested additional time, belies SPI's implied contention that it relied on the City's assurances and believed the hearing to be effectively postponed before the date of the hearing. That SPI chose to attend the hearing empty-handed because it assumed its request for continuance would be granted does not affect our analysis. *Cf. Ezeoke v. Tracy*, 349 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("A lawyer who gambles by requesting a continuance and then leaving the country before the request has been ruled on reasonably can anticipate adverse consequences."). Accordingly, we do not agree with SPI that the evidence establishes a procedural due process violation.

We overrule SPI's Issue 2.[7]

## B.      Substantial Evidence

SPI argues in Issue 3 that substantial evidence does not support the Commission's findings that SPI's property was in violation of certain Code of Ordinances provisions.

---

[7] SPI argues in Issue 1 that the district court erred "to the extent that" it relied on the "substantial evidence rule" as the applicable standard of review for its procedural due process argument. Nothing in the record indicates that the district court applied an incorrect standard; the City's motion does not urge and the district court's order does not recite an incorrect standard. Additionally, because we can affirm the district court's conclusion by applying the correct standards in our *de novo* review of SPI's challenges to the Commission's decision, we also overrule Issue 1. SPI argues in Issue 4 that the City's offer to agree to a proposed judgment remanding the case for a rehearing did not remedy the asserted procedural due process violation. Because we conclude that no procedural due process violation occurred, we also overrule Issue 4.

11

Texas recognizes a range of standards for reviewing administrative findings: (1) pure trial *de novo*; (2) pure substantial evidence; and (3) substantial evidence *de novo*. *Perkins*, 293 S.W.3d at 653. We review the Commission's decision under the pure substantial evidence rule, which authorizes the reviewing court to consider only the factual record made before the administrative body and determine if its findings are reasonably supported by substantial evidence. *See* TEX. LOC. GOV'T CODE ANN. § 54.039(f); *Perkins*, 293 S.W.3d at 653.

"Substantial evidence review resembles legal sufficiency review." *See Dozier v. Tex. Emp't Comm'n*, 41 S.W.3d 304, 309 (Tex. App.—Houston [14th Dist.] 2001, no pet.). "Substantial evidence" is defined as evidence amounting to more than a mere scintilla. *Tex. Health Facilities Comm'n*, 665 S.W.2d at 452 (citing *Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 823 (1958)). Under substantial evidence review, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Id.* (citing *Lewis*, 550 S.W.2d at 13). "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Id.* at 452–53 (citing *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex. 1966)). Administrative findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the appellant to prove otherwise. *Id.* at 453; *Tex. Alcoholic Beverage Comm'n v. Mini, Inc.*, 832 S.W.2d 147, 150 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

The Commission found that Building 1 was in violation of the terms of the City of Houston's Code of Ordinances Section 10-361(a)(3), (a)(11), and (b)(2), as well as Section 10-343(b)(4), (c)(9), and (e)(3).[8] These subsections concern buildings that are not weathertight and waterproof; secured from unauthorized entry to the extent that vagrants, uninvited persons, or children could enter; free of holes that constitute health or

---

[8] The Commission also found that Building 1 was in violation of Section 10-343(c)(4), but SPI does not challenge that finding on appeal.

safety hazards or that would allow insects and other pests to gain access to the extent constituting a present hazard to health or safety; or free of interior rubbish and garbage. *See* Houston, Tex., Code of Ordinances ch. 10, art. IX, §§ 10-361, 10-343 (2002) (current versions at §§ 10-371, 10-363). The Commission found that Building 2 was in violation of the terms of the City of Houston's Code of Ordinances Section 10-343(c)(1), (c)(4), and (c)(9). These subsections concern buildings that are not protected on the exterior from decay; weatherproof and watertight; or free of holes that constitute health or safety hazards. *See id*. § 10-343 (2002) (current version at § 10-363).[9] SPI challenges each of these findings under the substantial evidence rule.

With respect to Building 1, City inspector Cherie Strong testified to her observations based on her inspection of the property the morning of the hearing:

> The structure . . . was vacant and open with partially boarded windows and doors. A few of the windows[,] the boards had been removed and there were — the pane was broken — the window pane was broken in the windows rendering the property not weathertight or waterproof and also rendering it open to the elements.
>
> The exterior of the structure is deteriorating — deteriorating where the wall studs are starting to — or being exposed to the elements of nature. The structure is — the property is posted no trespassing so I wasn't able to get onto the property and get any interior shots.

*　　　　　*　　　　　*

---

[9] Section 10-361(a)(3) and (a)(11) define a structure as a dangerous building if the "[r]oofs or walls . . . are not weathertight or waterproof" or if it has "been left unsecured from unauthorized entry to the extent that [it] may be entered by vagrants or other uninvited persons as a place of harborage or could be entered by children." Houston, Tex., Code of Ordinances ch. 10, art. IX, § 10-361(a)(3), (a)(11) (2002). Section 10-361(b)(2) states that a building that "is boarded up, fenced or otherwise secured in any manner" nonetheless constitutes a dangerous building if "[t]he building's roof, walls or floor contains holes that would allow insects, ectoparasites, rodents or other pests to gain access to the building for harborage to the extent constituting a present hazard to health or safety." *Id*. § 10-361(b)(2). Sections 10-343(b)(4), (c)(1), (c)(4), (c)(9), and (e)(3) require owners to "[k]eep the doors and windows of a vacant building . . . securely closed to prevent unauthorized entry"; "[p]rotect the exterior surfaces of a building reasonably subject to decay by application of a protective covering, coating or other preservative"; "[m]aintain a building intended for human occupancy . . . in a weatherproof and watertight condition"; "[r]epair holes, cracks, breaks and loose surface materials that are health or safety hazards in or on floors, walls, ceilings, porches, steps and balconies"; and "[m]aintain the interior of a vacant building . . . free from rubbish and garbage." *Id*. § 10-343(b)(4), (c)(1), (c)(4), (c)(9), (e)(3).

You could see where the exterior of the property is starting to mold and it has mildew on it where the asbestos is starting to decay. . . . You can see there where the exterior is deteriorated. You got [sic] broken windows, open windows, where it's been partially boarded. More open windows which are allowing for the elements of nature to enter into the structure.

Second floor, more open windows there were at one time partially boarded. . . . [T]he exterior . . . is deteriorating and exposing the wall studs.

\*     \*     \*

This morning when I went out to the property, the property had . . . been boarded a little bit — secured a little bit better with boards placed over the windows that were open or broken. As far as the repairing to the exterior of the other property, it has not been done.

With respect to Building 2, Strong testified to her observations based on her inspection of the property the morning of the hearing:

[T]he property is occupied. It's an occupied multi-dwelling and the property is posted no trespassing so I wasn't able to get onto the property to get any interior shots. But the exterior of the property is starting to deteriorate where the — you could see there's possibly termite damage done to the exterior of the property where the walls — the exterior wall covering has deteriorated[,] exposing the wall studs to the elements of nature and it was all around the property — all around the building.

Around the headers and the window sills around the windows are starting to deteriorate where apparently there is termite damage which would render the property not weather tight or waterproof.

\*     \*     \*

[There is] more deterioration of the exterior of the property and you can see where it's possible termite damage there. . . . [Y]ou see the deterioration of the exterior of the covering on the wall, exposing the wall studs to the elements of nature. . . . [Y]ou can tell that there's termite damage on the property that's been done to the exterior walls. And around the windows you can see is there where it's deteriorated, where the sill is deteriorated, and the headers are starting to deteriorate . . . rending it not weather tight and weatherproof.

[There is] more deterioration where the exterior is basically nonexistent, exposing the wall studs. Deterioration around the window and above the gable there is some deterioration above the gable that has been

14

partially repaired but not completely repaired.[10]

The City also introduced a number of photographs of the property showing exterior damage to the buildings. The electronic date stamp on these photos ranges from July 2004 to January 2010. When asked whether the photographs "represent those structures," Strong answered, "Yes, sir, they do."

The Commission inquired whether SPI had done any repairs to the buildings, and Hageney answered:

> One of the pictures will show the roof was — will indicate we replaced the roof at a cost of about $12,000. . . . [W]e secured the front building — no. Some. You saw some HardiPlank put up there. Yeah. Some of the HardiPlank. But the front building has been the issue because it's vacant and it's been boarded. And what will happen is, for whatever reason, people take the boards off.
>
> &ast; &ast; &ast;
>
> But there's some — there's some deterioration on the exterior.
>
> &ast; &ast; &ast;
>
> [Y]ou can see where we replaced the roofs on both of them and replaced the facia. We haven't gone around — but down below on the right-hand side you can see where we replaced some HardiPlank.
>
> &ast; &ast; &ast;
>
> That's an old photo. That's been repaired. That would have been one from before. All that's been repaired.[11] So the exterior does have some places where the siding is off, the windows are in disrepair, and some of that trim around the windows needs to be replaced as we discussed.

We conclude that the record from the hearing contains more than a scintilla of evidence that Building 1 was not weathertight and waterproof; secured from unauthorized entry to the extent that vagrants, uninvited persons, or children could enter; or free of holes that constitute health or safety hazards or that would allow insects and other pests

---

[10] The transcript indicates that a video of Strong's inspection may have been played for the Commission as Strong narrates. The City did not include the video in its summary judgment evidence and does not argue that we could view it if it had been included in the record on appeal.

[11] The record does not indicate which photo Hageney was discussing.

to gain access to the extent constituting a present hazard to health or safety. *See id*. § 10-361(a)(3), (a)(11), (b)(2); *id.* § 10-343(b)(4), (c)(9); *see also Tex. Health Facilities Comm'n*, 665 S.W.2d at 452. We also conclude that the record from the hearing contains more than a scintilla of evidence that Building 2 was not protected on the exterior from decay; weatherproof or watertight; or free of holes that constitute health or safety hazards. *See* Houston, Tex., Code of Ordinances ch. 10, art. IX, § 10-343(c)(1), (c)(4), (c)(9) (2002); *see also Tex. Health Facilities Comm'n*, 665 S.W.2d at 452. However, the Commission heard no evidence regarding whether SPI had kept the interior of Building 1 "free from rubbish and garbage" pursuant to Section 10-343(e)(3). *See* Houston, Tex., Code of Ordinances ch. 10, art. IX, § 10-343(e)(3) (2002). We sustain SPI's Issue 3 to that extent and overrule Issue 3 in all other respects.

## CONCLUSION

We reverse the district court's summary judgment on the issue of whether substantial evidence supports the City of Houston Building and Standards Commission's finding that SPI failed to keep the interior of Building 1 "free from rubbish and garbage" pursuant to Houston Code of Ordinances section 10-343(e)(3); we remand that issue to the district court for proceedings consistent with this opinion. We affirm the district court's summary judgment in all other respects.


/s/    Sharon McCally
        Justice


Panel consists of Justices Brown, Boyce, and McCally.